# United States Court of Appeals
## For the First Circuit

No. 02-1787

UNITED STATES,

Appellee,

v.

DARYLL J. STROTHER,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, U.S. District Judge]

Before

Torruella, Circuit Judge,
Stahl, Senior Circuit Judge,
and Howard, Circuit Judge.

Timothy G. Watkins, Federal Defender Office, for appellant.
John A. Capi, Assistant United States Attorney, with whom
Michael J. Sullivan, United States Attorney, was on brief, for
appellee.

January 28, 2003

**STAHL, Senior Circuit Judge.** Defendant-appellant Daryll J. Strother appeals from his conviction of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). He contends that the search that led to his arrest and conviction was not supported by probable cause and that he was wrongly deprived of a Franks hearing. We affirm the judgment below.

## I. BACKGROUND

On April 7, 2000, the government applied for a warrant to search Strother's residence, located on the first floor of 41 Kingsdale Street in Dorchester, Massachusetts. 41 Kingsdale is a three-story, three-family residence.

The application in support of the search warrant featured the affidavit of Federal Bureau of Investigation Special Agent Nicholas B. Boshears. In his affidavit, Boshears stated that in February and March of 2000, a cooperating witness ("CW-1") provided Boshears with information concerning Strother's involvement in fraudulent check cashing, drug trafficking, and possession of firearms. Approximately a month before the warrant application, CW-1 told Boshears that he had personal knowledge that Strother used the first floor of 41 Kingsdale Street to store cocaine, heroin, and firearms.[1]

CW-1 had provided information to Boshears on one previous occasion, when he advised him of the location of a person wanted on

_____

[1]For convenience, we assume that CW-1 is male.

-2-

a federal warrant. CW-1's information in that case proved accurate and ultimately led to the individual's conviction.

Boshears's affidavit set forth the government's efforts to corroborate CW-1's information.[2] As to Strother's residence, Boshears stated that a United States Secret Service agent involved in the investigation had contacted officers of the United States Postal Police [sic], who in turn interviewed the postal carrier assigned to deliver mail to 41 Kingsdale. According to Boshears, the postal carrier verified that mail was delivered to the Strother family at the first floor of 41 Kingsdale Street, and postal records also indicated that the first floor was occupied by the Strother family. The affidavit additionally asserted that, according to postal records, floors two and three of 41 Kingsdale Street were occupied by the Brisco family and by Dennis and Mildred Richardson, respectively.

Based on this information, a magistrate judge issued a warrant authorizing the search of "the apartment residence of Daryll J. Strother located on the first floor of 41 Kingsdale Street, Dorchester, MA . . ." The warrant authorized the police to search for money, cocaine, drug paraphernalia and records, firearms, and items showing possession of the premises. The search

---

[2]The corroboration of CW-1's statements concerning Strother's involvement in fraudulent check cashing, drug trafficking, and possession of firearms is set forth in detail infra, Section II(A).

was conducted on April 17, yielding, inter alia, a twelve-gauge shotgun and a pistol.

On June 14, 2000, the grand jury returned an indictment charging Strother with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). On December 28, 2001, Strother moved to suppress evidence seized during the search on the grounds that (1) the affidavit lacked probable cause, and (2) the affidavit contained an error that warranted a Franks hearing. Specifically, his Franks claim challenged Boshears's assertion that he lived at the searched residence. The motion attached an affidavit in which Strother denied ever having received mail there.

In response to Strother's request for a Franks hearing, the government submitted a second affidavit from Boshears stating that any error in the original affidavit -- the one supporting the warrant application -- was unintentional. In the second affidavit, Boshears attested that he reviewed his file and found a copy of a March 17, 2000 memorandum from the Postal Service to the Secret Service agent that stated that 41 Kingsdale "is a three family residence [where mail was delivered to] Dennis and Mildred Richardson, The Brisco Family, and The Struthers [sic] Family." The memorandum further stated that the mail carrier did not have information as to the specific occupants of each floor. Boshears stated that he had no recollection whether he sought more detailed

information from the postal service concerning the occupants of 41 Kingsdale.

The district court held a non-evidentiary hearing on January 29, 2002. Two days later, by written memorandum, it denied Strother's motion to suppress and his request for a Franks hearing.

On February 26, 2002, Strother entered a conditional plea of guilty to a superseding indictment charging the same offense, pursuant to Fed. R. Crim. P. 11(a)(2). On June 10, 2002, the court sentenced him to a term of 180 months in prison. It entered judgment on June 18, 2002, and this appeal followed.

## II. DISCUSSION

### A.       Probable cause

"In reviewing a denial of a suppression motion, the district court's ultimate legal conclusion, including the determination that a given set of facts constituted probable cause, is a question of law subject to de novo review." United States v. Khounsavanh, 113 F.3d 279, 282 (1st Cir. 1997) (citing Ornelas v. United States, 517 U.S. 690, 698-99 (1996)). The district court's findings of historical fact are reviewed for clear error. Id.

A warrant application must demonstrate probable cause to believe that (1) a crime has been committed (the "commission" element), and (2) enumerated evidence of the offense will be found at the place to be searched (the "nexus" element). United States v. Zayas-Diaz, 95 F.3d 105, 110-11 (1st Cir. 1996). "With regard

to the 'nexus' element, the task of a magistrate . . . is 'to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Feliz, 182 F.3d 82, 86 (1st Cir. 1999) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)).

In determining the sufficiency of an affidavit supporting a search warrant, we consider whether the "totality of the circumstances" stated in the affidavit demonstrates probable cause to search the premises. Khounsavanh, 113 F.3d at 283. We examine the affidavit "in a practical, common-sense fashion and accord considerable deference to reasonable inferences the [issuing judicial officer] may have drawn from the attested facts." United States v. Barnard, 299 F.3d 90, 93 (1st Cir. 2002) (quoting Zayas-Diaz, 95 F.3d at 111) (internal quotations omitted). Among the factors that may contribute to a probable cause determination are:

> whether an affidavit supports the probable veracity or basis of knowledge of persons supplying hearsay information; whether informant statements are self-authenticating; whether some or all [of] the informant's factual statements were corroborated wherever reasonable and practicable (e.g., through police surveillance); and whether a law-enforcement affiant included a professional assessment of the probable significance of the facts related by the informant, based on experience or expertise.

-6-

Khounsavanh, 113 F.3d at 284 (quoting Zayas-Diaz, 95 F.3d at 111) (internal quotations and footnote omitted). None of these factors are individually indispensable; rather, "stronger evidence on one or more factors may compensate for a weaker or deficient showing on another." Id. (quoting Zayas-Diaz, 95 F.3d at 111).

Strother argues that the warrant application failed to establish CW-1's reliability because CW-1's track record was limited to one instance of locating an individual wanted by the police. He also contends that the warrant application was deficient as to the nexus element: i.e., whether there was probable cause to believe that firearms were likely to be found at the searched residence. We disagree and hold that the totality of the circumstances set forth in the application demonstrates probable cause.

We need not decide whether the supporting affidavit's recitation of CW-1's prior assistance to the authorities is sufficient, standing alone, to establish his reliability. Here, CW-1's reliability was bolstered by the detail he provided about Strother's criminal activities -- including drug trafficking, fraudulent check cashing, and illegal firearms possession -- and by independent corroboration thereof. See Gates, 462 U.S. at 230 (informant's truthfulness and basis of knowledge are not "entirely separate and independent requirements to be rigidly exacted in every case.") First, CW-1 told Boshears that in March, 2000, he

-7-

saw Strother scooping up large quantities of cocaine, and possibly heroin, into plastic bags on the first floor of 41 Kingsdale; that Strother carried the narcotics in small metal tins when outside of his apartment; and that Strother used the first floor of 41 Kingsdale to store cocaine and heroin. These allegations were corroborated to some degree by, inter alia, Boshears's review of Strother's criminal record, which included two convictions for possession of cocaine with intent to distribute; an outstanding warrant for his arrest on state drug charges; and a veteran Boston Police Officer's statement that Strother was known to "run drug sales."

Second, CW-1 told Boshears that Strother was cashing and providing others with fraudulent checks. According to CW-1, the check-cashing scheme involved computer-generated checks that were prepared to look like payroll checks, made payable in amounts less than $500, and cashed at supermarkets by persons who obtained check cashing privileges at such stores. Boshears's corroboration of the existence of and Strother's participation in this scheme included information that (1) in January 2000, at least 41 fraudulent payroll checks in amounts ranging from $479.00 to $499.96 were cashed at Boston-area Stop & Shop stores; (2) also in January 2000, a person using Strother's social security number had cashed one of these fraudulent checks; and (3) the veteran Boston Police Officer

stated that Strother was known to be involved in the distribution side of a counterfeit check cashing and credit card fraud scheme.

Third, CW-1 told Boshears that in March, 2000, he had personally observed two firearms -- a twelve-gauge pump-style shotgun and a nine-millimeter pistol -- on the first floor of 41 Kingsdale. To determine whether Strother's possession of these firearms was evidence of a crime, Boshears reviewed records maintained by the Massachusetts Criminal History Systems Board and learned that he had been convicted of several felonies, including, in 1985, assault to kill, assault and battery with a dangerous weapon, and carrying a dangerous weapon. In his affidavit, Boshears also stated that he relied on his own knowledge that

> (1) under federal law, it is a criminal offense for a previously convicted felon to possess a firearm or ammunition that has crossed a state line at any time after its manufacture; (2) most firearms, and all or almost all ammunition, recovered by law enforcement in Massachusetts were manufactured outside of Massachusetts; and (3) most people store their firearms in their homes and generally keep them for long periods of time because firearms are expensive, do not wear out easily, and are difficult to acquire, especially by persons who possess them unlawfully.

The totality of these elements -- CW-1's personal knowledge as to the location of the drugs and firearms, the specificity and detail of CW-1's information as to the counterfeit check-cashing scheme, the independent corroboration of several elements of Strother's criminal activity (including the veteran

Boston police officer's statements), and Strother's prior convictions -- supports the existence of probable cause in this case. See Khounsavanh, 113 F.3d at 284. Especially when considered in conjunction with the reliability established by CW-1's track record, we see no error in the district court's determination that the search warrant was lawful.

**B.        Franks hearing**

We review the court's denial of Strother's motion for a Franks hearing for clear error. See United States v. Grant, 218 F.3d 72, 76 (1st Cir. 2000). In Franks v. Delaware, 438 U.S. 154 (1978), the Supreme Court held that a defendant is entitled to a hearing to challenge the truthfulness of statements made in an affidavit supporting a search warrant if he makes a substantial preliminary showing that (1) a statement in the affidavit was knowingly and intentionally false, or made with reckless disregard for the truth, and (2) the falsehood was necessary to the finding of probable cause. Id. at 171-172.

It is undisputed that the warrant application contained inaccurate statements as to the government's efforts to confirm Strother's address. Boshears's initial affidavit stated that the relevant postal carrier had verified that mail was delivered to the Strother family at the first floor of 41 Kingsdale Street, and that postal records indicated that the first floor was occupied by the Strother family. Later, in response to Strother's motion to

suppress, Boshears stated that the postal service confirmed only that mail for "the Struthers [sic] Family" was delivered to 41 Kingsdale, and that the mail carrier did not have information as to the specific occupants of each floor.

We agree with the district court, however, that Strother did not satisfy the second prong of the Franks test. Even assuming that Boshears's misstatements were made with the requisite animus, they were not necessary to the finding of probable cause. As discussed supra, CW-1's identification of the first floor of 41 Kingsdale as the locus of Strother's criminal activity was rendered reliable, at least to some degree, by his track record and was corroborated in large measure by the Postal Service's information that Strother lived on one of the three floors of the building. The totality of this evidence was sufficient to support the probable cause determination absent independent corroboration that Strother lived specifically on the first floor.

We do not condone the misstatement on the search warrant application, regardless of whether it resulted from an innocent oversight, negligence or willful misconduct. Because the misinformation was not necessary to support the magistrate judge's finding of probable cause, however, we need go no further. "[I]f, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient

-11-

content in the warrant affidavit to support a finding of probable cause, no hearing is required."  Id. at 171-172.

We **AFFIRM** the conviction.