# United States Court of Appeals
## For the First Circuit

No. 02-2697

UNITED STATES OF AMERICA,

Appellee,

v.

NELSON SANTANA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE
[Hon. Joseph A. DiClerico, Jr., U.S. District Judge]

Before

Boudin, Chief Judge,
Torruella, Circuit Judge,
and Baldock,* Senior Circuit Judge.

Bjorn Lange, Assistant Federal Public Defender, Federal
Defender Office, District of New Hampshire, for appellant.
Mark E. Howard, Assistant United States Attorney, with whom
Thomas P. Colantuono, United States Attorney, and Samantha M.
Jewett, Legal Intern, were on brief, for appellee.

September 3, 2003

* Of the Tenth Circuit, sitting by designation.

**TORRUELLA, Circuit Judge**.  Nelson Santana was convicted of conspiracy to distribute and to possess with intent to distribute between one-half and five kilograms of cocaine.  After considering Santana's challenges, which were ably briefed and well argued, we affirm.

## I.  Background Facts

In 1998, local, state, and federal law enforcement agencies began an investigation of suspected cocaine and marijuana traffickers in southern New Hampshire.  They debriefed informants, used undercover agents to attempt to purchase drugs, conducted physical surveillance, and reviewed telephone records.  In addition, beginning February 22, 2001, law enforcement agencies conducted court authorized wire taps on four telephone numbers, including a cellular telephone belonging to Alfred Nickerson.

Telephone calls between Nickerson and Santana were recorded on May 7 and May 9, 2001.  Based on those calls and other information gathered during their investigation, law enforcement agents believed Santana regularly supplied cocaine to Nickerson and that a drug transfer was going to take place May 9.

At about 10:30 a.m. on May 9, an agent with the Drug Enforcement Administration ("DEA") saw Santana enter the apartment complex at 210 Brook Village Road in Nashua, New Hampshire, where Santana's ex-wife lives.  Santana left about 1:00 p.m., accompanied

by an unidentified male. Santana spoke briefly and shook hands with this man before driving away.

Also on May 9, investigators were watching Nickerson. Leaving his home at about 9:05 a.m., he stopped at several Nashua businesses including R.J. Motor Sports. This stop is significant because agents watched Nickerson leave R.J. Motor Sports May 7 with a package. At trial, the government alleged that Nickerson obtained marijuana from Roger Paget, the owner of R.J. Motor Sports. The defense argued at trial that Nickerson's cocaine also came from Paget.

On May 9, Nickerson left R.J. Motor Sports empty-handed. He then drove to the Brook Village Road apartment complex, arriving at approximately 12:30 p.m. and leaving (alone) fifteen minutes later. The surveilling officer saw him enter the complex, but could not identify which apartment, if any, he entered.

Believing that Nickerson and Santana made a drug transaction inside the Brook Village Road complex, investigators ordered state troopers to stop Nickerson's car. Nickerson was "clearly nervous"; the trooper ordered him out of the car to ensure her safety. She then found what she believed to be marijuana in Nickerson's car and arrested him. An inventory search of Nickerson's car yielded approximately eight ounces of cocaine, four ounces of marijuana, a digital scale, an address book, and more

than one thousand dollars.  After his arrest, Nickerson agreed to become a government informant.

A grand jury indicted Santana on April 10, 2002, and he was arrested on April 11, 2002 and charged with conspiracy to distribute more than five kilograms of cocaine between 1997 and May 2001.  At Santana's trial, Nickerson testified that Santana had been his long-time supplier of cocaine and that he purchased cocaine from Santana up to and including the day of Nickerson's arrest -- May 9, 2001.  Nickerson said that he and Santana had little social interaction and mainly communicated about drugs. Nickerson also testified that he used and sold marijuana, which he obtained from Paget, the owner of R.J. Motor Sports.

On September 24, 2002, a jury found Santana guilty of conspiring to possess and possessing with intent to distribute between one-half and five kilograms of cocaine.  He was sentenced to 121 months imprisonment to be followed by four years of supervised release and ordered to forfeit money, certain real property and an automobile.  This appeal followed.

## II.  Discussion

### A.  Motion to Suppress Wiretaps

An April 27, 2001, order permitting wiretapping of Nickerson's telephone identified Santana as a potential

interceptee.[1]  Conversations on that line between Santana and Nickerson were recorded on May 7 and May 9, 2001.  Santana appeals the district court's denial of his motion to suppress the evidence and his request for a hearing under Franks v. Delaware, 438 U.S. 154, 155 (1978).  The government does not contend that Santana lacks standing to seek suppression of the wiretap evidence.

Santana claims that the wiretap violated Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2522 (2000) ("Title III") -- the federal statute governing electronic surveillance -- because (1) probable cause did not exist to support the wiretap and (2) there was no required showing of necessity for the wiretap.  He also asserts that a Franks hearing was warranted because of material misrepresentations by the affiant.

First, Santana asserts that while the government had probable cause to suspect Nickerson was committing or would commit a crime, it lacked probable cause to identify Santana as involved in criminal activity and therefore had no right to identify Santana as an interceptee.  We review de novo the district court's determination that the facts in the affidavit constituted probable cause.  United States v. Strother, 318 F.3d 64, 67 (1st Cir. 2003).  Any findings of fact are reviewed for clear error.  Id.  Our

---

[1]  The government may record conversations only between the target telephone and identified interceptees.

inquiry is whether the affidavit "provided a sufficient basis for a finding of probable cause," United States v. Scibelli, 549 F.2d 222, 226 (1st Cir. 1977); that is, we must determine "if the facts set forth in the application were minimally adequate to support the determination that was made." United States v. Villarman-Oviedo, 325 F.3d 1, 9 (1st Cir. 2003). Probable cause exists when the affidavit demonstrates in some trustworthy fashion the likelihood that an offense has been or is being committed. United States v. Vigeant, 176 F.3d 565, 569 (1st Cir. 1999).

The affidavit contains the following information about Santana:[2] that an informant knew Santana was Nickerson's cocaine supplier for many years and as recently as two months before the affidavit was made; that the informant (correctly) knew that Santana had previously been arrested on drug charges and that Santana's brother was in prison following a drug conviction; and that several phone calls had been placed from Nickerson (the primary target of the investigation and wiretap) to the cell phone of Santana's girlfriend and to Santana's ex-wife, and that Santana was thought to use each of those phones. We therefore find that there was a sufficient basis for the issuing judge to determine

---

[2]   We note that the apartment number of Santana's ex-wife is incorrect in several places in the affidavit. This error is not material because even when it is excised from the affidavit, there is probable cause. See United States v. Nelson-Rodríguez, 319 F.3d 12, 34 (1st Cir. 2003).

that Santana was committing, had committed, or was about to commit the listed drug-related crimes.

Second, Santana asserts that the government did not demonstrate necessity for the wiretap. The necessity requirement under Title III requires that the government's interception application include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c). The application must "demonstrate that the government has made a reasonable, good faith effort to run the gamut of normal investigative procedures before resorting to means so intrusive as electronic interception of telephone calls." United States v. London, 66 F.3d 1227, 1237 (1st Cir. 1995). However, the government need not demonstrate that it exhausted all investigative procedures. United States v. López, 300 F.3d 46, 52 (1st Cir. 2002). When reviewing the government's showing of necessity, our role "is not to make a de novo determination of sufficiency as if [we] were [the issuing judge], but to decide if the facts set forth in the application were minimally adequate to support the determination that was made." Id. at 53 (quotation omitted); see also United States v. Ashley, 876 F.2d 1069, 1073 (1st Cir. 1989) ("The government affidavit is adequate if it satisfies the burden that it indicate a 'reasonable

likelihood' that alternative techniques would fail to expose the crime.").

We find that the government's application contained the required details regarding its inability to pursue the criminal activity through less intrusive means. The affidavit stated, among other things, that physical surveillance and the use of pen register information had been employed; that no confidential informants were available to purchase drugs; that not enough information was known to seek a search warrant; and that garbage searches were not possible. The affiant therefore stated that a wiretap was necessary to uncover the full scope of the conspiracy, including conclusive proof of identity and information as to how the drug sales were made. See Villarman-Oviedo, 325 F.3d at 9-10 (showing of necessity made under similar circumstanced). We find that the affidavit does not fall below the standard of minimal adequacy. See Nelson-Rodríguez, 319 F.3d at 33.

Finally, a Franks hearing is required "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." Franks, 438 U.S. at 155. A district court's determination that the requisite showing for a Franks

-8-

hearing has not been made is overturned only if clearly erroneous. United States v. Rivera-Rosario, 300 F.3d 1, 20 (1st Cir. 2002).

Here, there was no clear error in the district court's denial of a Franks hearing. The only error identified by Santana is a reference to the wrong apartment unit number. The government submitted an affidavit that the error was, at most, negligent, and Santana has no evidence to suggest that it was done knowingly or intentionally. See United States v. Adams, 305 F.3d 30, 36 n.1 (1st Cir. 2002) (noting that "[m]ere inaccuracies, even negligent ones, are not enough" to warrant a Franks hearing). Santana asserts that the apartment listing was done with reckless disregard for the truth because the surveilling officer was not the affiant, and the affiant did not verify the apartment number. Failure to investigate, however, does not evidence a reckless disregard for the truth. United States v. Ranney, 298 F.3d 74, 78 (1st Cir. 2002).

Moreover, even if Santana were able to meet the preliminary hurdle in seeking a Franks hearing, he has not shown that absent the false information the affidavit contained insufficient evidence to support a finding of probable cause. As we explained above, the exact apartment unit number of Santana's ex-wife was not necessary to demonstrate probable cause.

We hold that the affidavit supporting the application to intercept calls from Nickerson's cellular phone to Santana showed

probable cause, made the required demonstration of necessity, and did not contain egregious misrepresentations necessitating a Franks hearing. The district court properly admitted evidence of the telephone calls between Santana and Nickerson.

**B. Evidence of Prior Criminal Acts**

Santana also challenges the district court's decision to allow introduction of a prior drug conspiracy between him and Nickerson. We review the admission of prior bad act evidence for abuse of discretion. United States v. Varoudakis, 233 F.3d 113, 118 (1st Cir. 2000).

Santana was charged with participating in a conspiracy to distribute and to possess with intent to distribute cocaine from sometime "in or about 1997" until May 2001. At trial, however, Nickerson testified that his former drug supplier introduced him to Santana around 1992, and he bought one-half to one ounce of cocaine from Santana every week or two until some point in 1996. Nickerson stated that Santana usually "fronted" him the cocaine. Nickerson said that he stopped buying cocaine in 1996 and Santana told him to contact him in the future if he wanted to buy drugs again. Nickerson further testified that he approached Santana in 1997 and resumed purchasing cocaine from Santana. Santana was charged and convicted for this second relationship.

Santana objected to Nickerson's testimony about their first drug conspiracy. The district court gave a limiting

instruction, informing the jury that it could only consider Nickerson's testimony in deciding how the charged conspiracy or a trust relationship was formed, how the conspiracy operated, the identity of Santana, and Nickerson's credibility. Santana argues that any probative value of the testimony was substantially outweighed by its prejudice and should not have been admitted.

Evidence of prior bad acts is inadmissible to show bad character and consequent propensity to commit crimes, but may be admitted if it satisfies a two-part analysis: "First, the past incident must have some relevance other than to show the defendant's propensity to commit the crime. Second, even if specially relevant, the danger of prejudice cannot substantially outweigh the probative value of the evidence." United States v. Agudelo, 988 F.2d 285, 287 (1st Cir. 1993) (citations omitted); see also Fed. R. Evid. 403, 404(b).

Reviewing the evidence here and the limiting instruction given by the trial judge, we find no abuse of discretion. It is proper to include evidence of prior bad acts in conspiracy cases if they "explain the background, formation, and development of the illegal relationship and, more specifically, to help the jury understand the basis for the co-conspirators' relationship of mutual trust." United States v. Escobar-de Jesús, 187 F.3d 148, 169 (1st Cir. 1999) (internal citations omitted). Santana's counsel conceded at oral argument that the evidence had "special"

-11-

probative value. The question is whether its probative value was substantially outweighed by the danger of unfair prejudice.

All of Nickerson's testimony, including the details of their drug dealings in the early 1990's, was prejudicial to Santana; it was not an abuse of discretion, though, to find that the prejudice did not substantially outweigh the testimony's probative value. First, the trial court gave a limiting instruction. See United States v. Vest, 842 F.2d 1319, 1327 (1st Cir. 1988) (finding that prejudicial effect can be reduced by issuing an appropriate limiting instruction). Second, although we are concerned about the length of time between Santana and Nickerson's first meeting and Santana's arrest, their early relationship was similar to the charged conspiracy and explained how the later drug conspiracy was formed. See United States v. Frankhauser, 80 F.3d 641, 648 (1st Cir. 1996) ("Probative value must be considered in light of the remoteness in time of the other act and the degree of resemblance to the crime charged."). Finally, there was other evidence regarding Santana's involvement in the drug conspiracy, including surveillance evidence, recorded phone calls, and Nickerson's testimony that he purchased cocaine from Santana up to and including May 9, 2001. Cf. United States v. Aguilar-Aranceta, 58 F.3d 796, 801 (1st Cir. 1995) (holding district court abused its discretion in admitting testimony where the prior conviction was the only evidence of knowing possession).

We have noted the difficulty of balancing probative value and prejudice in this situation:

> The more similar the prior bad act evidence is to the charged crime, the more likely it is to be deemed relevant under 404(b). Yet the more the prior bad act resembles the crime, the more likely it is that the jury will infer that a defendant who committed the prior bad act would be likely to commit the crime charged.

Varoudakis, 233 F.3d at 123. While we might have weighed the prejudicial effect and probative value differently, the district court did not abuse its discretion in admitting Nickerson's testimony. See id. at 122 ("The district court's determination on this issue merits great deference on appeal.").

## C. Agent's Testimony

Finally, Santana contends that the district court erred in allowing certain expert testimony from DEA Agent Jean Drouin. We review that evidentiary decision for an abuse of discretion. United States v. López-López, 282 F.3d 1, 14 (1st Cir. 2002). The hallmark of abuse of discretion review is deference. See Gen. Elec. Co. v. Joiner, 522 U.S. 136, 143 (1997).

Santana also appeals the district court's denial of his motion for a mistrial as a result of Drouin's testimony. We review that decision only for a manifest abuse of discretion, and "we will uphold the court's ruling unless the movant demonstrates a clear showing of prejudice." Villarman-Oviedo, 325 F.3d at 14.

-13-

Agent Drouin was surveilling Nickerson on May 7, 2001, when Nickerson entered R.J. Motor Sports and emerged carrying a bag containing a box-like object with rounded corners. Shortly after being seen carrying the suspicious bag, Nickerson placed a phone call to Ricky Rano, one of his customers, stating, "Thank you in hand!" -- a call which investigators understood to inform the customer that drugs were available. Investigators had information that Paget (the owner of R.J. Motor Sports) supplied Nickerson with marijuana, which he then sold to Rano. Drouin did not arrest Nickerson that day.

Nickerson was not arrested until May 9, 2001 -- the day he made a phone call to Santana and allegedly met with Santana inside the Brook Village Road apartment complex. When Nickerson was arrested, he had eight ounces of cocaine in his car. The prosecution alleged that he received the cocaine from Santana the day of his arrest. The defense, however, argued that the cocaine could have come from Paget on May 7, when Nickerson carried a bag out of R.J. Motor Sports.

Agent Drouin testified for the prosecution. When asked why he did not arrest Nickerson on May 7, he responded that he "knew it was marijuana." Asked the basis for his knowledge, Drouin answered that it was based on the characteristics of the package, intercepted telephone calls, and controlled buys from Rano, and added "we knew Alfred Nickerson was picking up what Ricky Rano

-14-

wanted, which was marijuana."  Drouin also testified that when he searched Nickerson's home on May 9, he smelled marijuana; he then discovered a wrapping containing marijuana residue that was similar to the wrapping on the package Nickerson carried on May 7.

Santana raises two distinct evidentiary appeals.  First, he alleges that it was error to allow testimony that Drouin could smell marijuana during the search of Nickerson's home, stating "[i]t should have been excluded under Rule 701 of the Rules of Evidence because it was not 'rationally based on the perception of the witness,' and because it was not helpful to the determination of a fact in issue, as well as because it did not meet the criteria in Rule 702 and case law."

We find Santana's first evidentiary challenge meritless. It is axiomatic that a witness may testify as to his personal knowledge -- here, what he smelled.  Fed. R. Evid. 602; see also Sheek v. Asia Badger, Inc., 235 F.3d 687, 695 (1st Cir. 2000). There was a sufficient foundation for this testimony because Drouin testified that his job exposed him to marijuana, and another witness testified that marijuana residue was found on the wrapper. See United States v. Paiva, 892 F.2d 148, 157 (1st Cir. 1989) (holding that past experience and personal knowledge and observation may qualify a lay witness to identify drugs).  The content of the wrapper was in issue because the defense wanted the jury to infer that it could be cocaine, while the government

-15-

alleged that it was marijuana. Santana suggests for the first time on appeal that the testimony should have been excluded under Rule 702. However, Drouin's testimony as to what he smelled was based on his perception and therefore he was not required to qualify as an expert under Rule 702. It was not an abuse of discretion to admit Drouin's lay opinion testimony that he smelled marijuana during a search of Nickerson's home. See id.

Next, Santana asserts that Drouin was not qualified to give either a lay or expert opinion that he "knew" what was in the package Nickerson was carrying. The defense objected and also moved for a mistrial, arguing that the evidence irreparably prejudiced Santana's right to a fair trial because the theory of the defense was that the package contained the cocaine that was later discovered in Nickerson's car.

We find that any error in permitting Drouin to testify that he knew Nickerson carried marijuana, and not cocaine, on May 7, was harmless. See United States v. Scott, 270 F.3d 30, 46 (1st Cir. 2001) (noting that harmless error applies to evidentiary rulings). The defense was able to cross-examine Drouin to expose perception difficulties including the fact that Drouin watched Nickerson from across a busy street. Drouin also stated on cross-examination that he only "knew" what was in the bag because of the ongoing investigation. Moreover, Nickerson himself testified that he was carrying marijuana in the bag Drouin saw him carrying out of

-16-

R.J. Motor Sports that day.  Any error in allowing Drouin to testify that Nickerson had marijuana did not likely affect the outcome and was therefore harmless.  See United States v. Brown, 938 F.2d 1482, 1488 (1st Cir. 1988) (finding erroneous admission of evidence harmless because it was not crucial to the conviction). Finally, because Santana has not demonstrated clear prejudice, we uphold the district court's denial of his motion for a mistrial. See Villarman-Oviedo, 325 F.3d at 14.

### III.  Conclusion

Santana's conviction is **<u>affirmed</u>**.