[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 24, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-10485

_____

D. C. Docket No. 05-20915-CR-DMM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ORLANDO ARIEL GONZALEZ PEREZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(June 24, 2008)**

Before BIRCH, PRYOR, and KRAVITCH, Circuit Judges.

PER CURIAM:

Defendant-appellant Orlando Ariel Gonzalez Perez was convicted of

conspiracy to possess with intent to distribute cocaine and sentenced to 60 months'

imprisonment. On appeal, he challenges (1) the denial of his motion to suppress intercepted phone calls, (2) evidentiary rulings, (3) the jury instructions, and (4) the amount of drugs for which he was held responsible at sentencing.[1] After oral argument and a thorough review of the record, we affirm.

## I.

Gonzalez Perez was charged along with Jairo Sanz de la Rosa ("Sanz"), Wilfredo Robles, Rudy Rodriguez, Jorge Isaacs Diaz ("Isaacs"), and Humberto Rua in a three-count indictment.[2] Count 1 charged all defendants with conspiracy to import five kilograms of more of cocaine, in violation of 21 U.S.C. §§ 952, 960(b), and 963. Count 2 alleged that all defendants engaged in conspiracy to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 846. Count 3 charged Sanz, Isaacs, and Rua with possession with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 841.

---

[1] Gonzalez Perez's challenge to his sentence is without merit. The jury found Gonzalez Perez to be responsible for less than 500 grams of cocaine. The evidence at trial established his involvement in close to 2 kilograms of cocaine. Thus, the court did not err in determining the amount of drugs to be between 400 and 500 grams. We affirm the sentence without further discussion.

[2] Rua was eventually dismissed from the indictment. Isaacs pleaded guilty to a single count and testified for the government. Following a trial, Sanz was convicted on all three counts. Robles and Rodriguez were convicted of conspiracy to possess with intent to distribute cocaine. Gonzalez Perez fled and was tried separately.

2

A. Pre-trial Motions

     1. Motion to Suppress Wiretap Evidence

United States DEA Agents began investigating the Del Toro drug ring in 2004. Wiretaps obtained by the U.S. government as part of that investigation identified Del Toro, William de Jesus Arias, Jorge Neiro Cuadra, and Sanz as sources of cocaine in the United States. The scheme involved an extensive structure of importation and distribution "cells." One such cell was under Sanz's leadership. The participants in the scheme used multiple phones to compartmentalize the cells and limit liability. In December 2004, as a result of intercepted calls, authorities were able to seize over twenty kilograms of cocaine that Del Toro imported using cargo planes.

In February 2005, DEA agents obtained information from a confidential informant regarding importation of drugs through Miami International Airport using airport employees. The informant confirmed that Sanz was involved in narcotics importation using Isaacs, an airport employee and Sanz's cousin, to remove drugs from incoming planes. In June 2005, Colombian officials intercepted a call, pursuant to a Colombian-issued wiretap, which led United States DEA agents to believe that Sanz was planning to import narcotics with Del Toro. In August 2005, Colombian authorities intercepted a call to Del Toro from Sanz at

786-426-7009 (target phone 1). Del Toro later informed Arias that Sanz's number was 786-356-9973 (target phone 2). Throughout August, Colombian authorities intercepted calls on these two phones concerning narcotics deliveries. Agents were able to intercept calls from Gonzalez Perez and Isaacs to target phone 1. Intercepted calls to target phone 2 identified Del Toro, Arias, and Isaacs as participants.

Based on this information, the U.S. government requested wiretaps for target phones 1 and 2 in September 2005. According to the affidavit, there was probable cause to believe agents would intercept calls connected to drug trafficking by Del Toro, Sanz, Arias, Isaacs, and others, via the two targeted phones. The government also identified Gonzalez Perez as a participant in Del Toro's organization based on information that he had been indicted in the Western District of Pennsylvania in 1992. The charges had been dismissed in 2000 after authorities were unable to locate him. The only other mention of Gonzalez Perez in the affidavit was evidence that he sent two wire transfers and that he had made two calls to target phone 1.

In its affidavit, the government stated that the intercepted calls would reveal evidence of the participants in drug trafficking offenses, and that other normal investigative techniques had failed. Specifically, the affidavit explained that

traditional methods such as surveillance, pen registers, and confidential informants had been of limited use due to the international scope of the scheme and Sanz's ability to conceal his location and identity. The affidavit also confirmed that the confidential informant had been arrested and could no longer provide new information. The affiant further explained why other techniques such as subpoenas, interviews, and undercover operations would not be successful and would draw attention to the investigation. According to the affidavit, the wiretaps would enable agents to identify additional participants and their locations and permit surveillance without alerting the participants to the investigation. Finally, the affidavit confirmed that agents would take all necessary steps to minimize the interceptions. The district court concluded that the affidavit established probable cause and issued the wiretap authorization for thirty days.

As a result of the initial wiretaps, agents intercepted numerous calls in which the targets used what agents believed to be code words to discuss deliveries. They also intercepted numerous calls involving Gonzalez Perez. In a September 30, 2005 call from Gonzalez Perez to Sanz on target phone 1, the two discussed what agents believed to be an attempted delivery of drugs to Willie, which according to a criminal database, was Robles's alias.

The government provided the court with updates during the initial wire tap

period. In one of these updates, the government informed the court that Gonzalez Perez was in possession of target phone 2.

The government obtained a second wiretap in November 2005 for target phone 1 and a new number 786-356-2676, which agents believed was another phone assigned to Sanz. The government informed the court that target phone 1 was being used by Sanz and the former target phone 2 (the 9973 number) was being used by Gonzalez Perez. Agents identified about 100 calls between target phone 1 and former target phone 2, leading them to believe that Gonzalez Perez was a participant in the narcotics scheme. Through the second authorizations, agents expected to intercept calls from Sanz, Gonzalez Perez, Del Toro, Arias, and Robles, among others. According to the affidavit, continued wiretaps could assist in identifying additional participants and narcotics deliveries. The remainder of the affidavit detailed the reasons the wiretap was necessary, the failure of other investigative techniques, and the methods of minimization. The district court granted authorization.

Gonzalez Perez moved to suppress the wiretap evidence on the grounds that the government had, inter alia (1) failed to show probable cause with respect to Gonzalez Perez, (2) failed to show necessity, and (3) failed to comply with the minimization requirements in 18 U.S.C. § § 2515 and 2518. He also requested a

Franks[3] hearing, alleging that the affidavits were contradictory and false. Following a hearing, the district court denied the motion to suppress and for a Franks hearing, concluding that there was probable cause to intercept Sanz's conversations and the statute did not require probable cause as to the likely or possible interceptees, as interceptions necessarily involved other people. The court further found that the government complied with the minimization requirements because the statute did not require the government to cease interceptions after Gonzalez Perez received the target phone from Sanz. Finally, the court concluded that the affidavit accompanying the September 2005 wiretap application sufficiently explained why traditional techniques would not work and was detailed and specific, and there was no allegation of deliberate falsehood in the application and no evidence that the affidavit contained false or deliberately misleading statements.

B. Trial

At trial, the government proffered evidence connecting Gonzalez Perez to Sanz's drug organization. Imer Diaz testified that he accompanied Robles on three occasions in which they met Gonzalez Perez. The first meeting was at a car dealership, where Gonzalez Perez and Robles sat in a truck listening to music and

_____

[3] Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

7

Gonzalez Perez offered to obtain some CDs for Robles. The following two meetings occurred at Gonzalez Perez's trailer, where Diaz and Robles met with Gonzalez Perez to discuss moving a boat. At the first of these two meetings, Robles, Diaz and Gonzalez Perez were present. At the second trip to the trailer, about a week later, Sanz was also present. Robles and Diaz measured the boat and discussed the need for a flatbed truck. Before leaving, Diaz and Robles entered the trailer, where Gonzalez Perez handed Robles a package wrapped in electrical tape and told Robles to sell it for him. Diaz could not say what was in the package. Robles did not take the package and later told Diaz that Gonzalez Perez was crazy and wanted to get him in trouble.

As a result of these meetings, Diaz was able to recognize Gonzalez Perez's voice. At the government's request, Diaz listened to recorded calls and identified Gonzalez Perez's voice. Defense counsel objected for lack of foundation.[4] Counsel did not object to the admission of the tapes or the transcripts, but challenged the voice identification. Defense counsel also objected to the government's use of Diaz as a credible witness because, according to counsel, the government had questioned Diaz's credibility in the prior trial during closing

---

[4] The government proffered testimony from the transcription services regarding the manner of translating and transcribing calls.

argument.[5]  Counsel sought to strike the testimony, admit the closing statement, or, alternatively, to read portions of it into the record under Fed. R. Evid. 801(d) as an admission of a party.  The government responded that it was not taking inconsistent positions, as the testimony in the two trials was consistent and that the prosecutor, at most, misspoke during closing argument.  The government further asserted that admitting the closing argument would be prejudicial.  The court denied the motion to strike, finding the testimony consistent, and denied the request to admit closing argument because it would be prejudicial and confusing for the jury.  The court instructed the jury, however, that it was up to them to determine the identity of the speakers.

At the close of the evidence, defense counsel requested the jury be instructed per the pattern jury instructions, which included the term "willfully."  The government requested that the court use the same instruction as in the prior trial, which mirrored the statutory language and excluded the term "willfully."  The court granted the government's motion over defense counsel's objection.  The jury

---

[5]  During Robles's trial, the government proffered evidence that DEA agents surveilling the trailer on September 30 observed Robles, Diaz, and Gonzalez Perez waiting for Sanz to arrive because they were locked out of the trailer.  Diaz, however, testified that he entered in the trailer and saw the black package.  In closing, the government questioned Diaz's credibility because the surveillance contradicted his testimony that he had been in the trailer.  The government explained that there had been confusion as to the sequence of events, but that Diaz's testimony in the instant trial clarified that he had been at the trailer twice but only inside once and there was no doubt that he had not entered the trailer on September 30.

convicted Gonzalez Perez of conspiracy to possess with intent to distribute cocaine, finding that the amount of cocaine involved was less than 500 grams. Gonzalez Perez was acquitted of conspiracy to import cocaine.

The court, in keeping with the jury's verdict, held Gonzalez Perez responsible for between 400 and 500 grams of drugs. The resulting advisory guidelines range was 51 to 63 months' imprisonment. The court sentenced Gonzalez Perez to a term of 60 months' imprisonment. Gonzalez Perez now appeals.

**III.**

In reviewing the denial of a motion to suppress, we review factual findings for clear error and the application of the law to those facts de novo. United States v. Newsome, 475 F.3d 1221, 1223 (11th Cir. 2007). All facts are construed in the light most favorable to the prevailing party, in this case the government. Id. at 1223-1224. A district court's finding with respect to whether an affidavit in support of a wiretap adequately demonstrated that law enforcement had exhausted normal investigative techniques, as required by 18 U.S.C. § 2518(1)(c), is subject to clear error review. United States v. Weber, 808 F.2d 1422, 1424 (11th Cir. 1987). A district court's determination that law enforcement agents' minimization procedures were reasonable under the circumstances is a factual determination

10

subject to the clearly erroneous standard of review. United States v. Moody, 977 F.2d 1425, 1433 (11th Cir. 1992). Evidentiary issues are reviewed for abuse of discretion. United States v. Jimenez, 224 F.3d 1243, 1249 (11th Cir. 2000). We review a trial court's rejection of a proposed jury instruction for an abuse of discretion. United States v. Garcia, 405 F.3d 1260, 1273 (11th Cir. 2005). We review a challenge to the substance of a jury instruction de novo. United States v. Stone, 9 F.3d 934, 937 (11th Cir. 1993).

**IV.**

A. Motion to Suppress

Under 18 U.S.C. § 2518, an application for a wire tap must include, inter alia: "a full and complete statement of the facts and circumstances relied upon by the applicant . . . including details as to the particular offense . . . , a particular description of . . . the type of communications sought to be intercepted, the identity of the person . . . whose communications are to be intercepted", and "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(b), (c).

The court may then issue an order "if the judge determines on the basis of the facts submitted by the applicant that– (a) there is probable cause for belief that

11

an individual is committing, has committed, or is about to commit a particular offense . . . ; (b) there is probable cause for belief that particular communications concerning that offense will be obtained through such interception; (c) normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous [and] (d). . . there is probable cause for belief that . . . the facilities from which, or the place where, the . . . communications are to be intercepted are being used, . . . are leased to, listed in the name of, or commonly used by such person." 18 U.S.C. § 2518(3).

Gonzalez Perez argues that there was no probable cause to support the initial interception of *his* calls, the government failed to show necessity of any wire taps, and the government improperly intercepted all of his calls. He explains that he requested a <u>Franks</u> hearing because the government's false and misleading statements concerning an indictment in Pennsylvania served to justify probable cause, and that the government did not produce all the alleged evidence supporting its theory. He notes that the majority of the affidavit submitted in support of the wire tap application referred to Sanz's activities, and he was not even named as a co-conspirator until after the others were arrested and cooperated with the government. He further asserts that the government should not have continued to intercept all the calls on Sanz's second phone after it learned that Sanz had given

the phone to Gonzalez Perez.

The government responds that the affidavits submitted established probable cause against Sanz and indicated that Gonzalez Perez was a potential target for intercepted calls on that phone. It contends that it was not obligated, under the minimization requirement, to cease intercepting calls when it learned that Gonzalez Perez was using the phone because the taps were intended to identify others involved in the conspiracy. The government disputes that it proffered any false or misleading information, and contends that no Franks hearing was required.

### 1. Probable Cause

An application for a wiretap authorization must be supported by the same probable cause necessary for a search warrant. United States v. Nixon, 918 F.2d 895, 900 (11th Cir. 1990). The issuing magistrate is to make a "practical, common-sense decision" about whether the "totality of the circumstances" indicate that there is probable cause that the sought-for evidence will be obtained. Id. This court's standard for review is "simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed." Id. (citation omitted). Moreover, the practical nature of the magistrate's decision justifies "great deference" upon review and calls for upholding the magistrate's findings even in marginal or doubtful cases. Id.

At issue is whether probable cause to intercept Sanz's calls extends to Gonzalez Perez's conversations, especially once the government was aware that Gonzalez Perez has possession of the phone, or if the government was required to show probable cause to intercepting Gonzalez Perez's calls. Gonzalez Perez concedes that there was probable cause to intercept Sanz's calls.

Upon review, we conclude that there was sufficient probable cause to obtain wire taps in September 2005.[6] Conversations, by there very nature, require two people. The government had information linking Gonzalez Perez to the drug organization. The court's order authorizing the wire tap stated that its purpose was, in part, to locate "the identity of the participants and conspirators of the organization." And the affidavit specifically identified Gonzalez Perez as a possible interceptee. Moreover, Gonzalez Perez does not dispute that there was probable cause to intercept Sanz's calls and many of those properly intercepted calls involved Gonzalez Perez.

The government's likely mistake concerning a prior indictment does not alter our analysis. The officers seeking the warrant acted in good faith based on

---

[6] Because we conclude the initial wiretaps were properly obtained, there is no merit to Gonzalez Perez's argument that the November wiretap was tainted by an illegal interception. Even if there was no probable cause to intercept Gonzalez Perez's phone, authorities were permitted to intercept Sanz's calls, many of which involved coded conversations with Gonzalez Perez. Once authorities intercepted these calls, they were able to establish probable cause for the November application.

14

information from authorities in Pennsylvania that there was a prior indictment. In any event, even without the information concerning the indictment, there was sufficient probable cause arising from the earlier investigation and communications intercepted by Colombian authorities.[7]

Finally, even if we were to conclude that probable cause was lacking, suppression is not the proper remedy. See United States v. Donovan, 429 U.S. 413, 438, 97 S.Ct. 658, 673, 50 L.Ed.2d 652 (1977) (holding that a violation of the requirement that the application identify all those likely to be overheard, 18 U.S.C. § 2518(1)(b)(iv), did not mandate suppression because the requirement did not play a central role in the decision to authorize surveillance); see also United States v. Van Horn, 789 F.2d 1492, 1500 (11th Cir. 1986).

2. Necessity

An application for an order authorizing a wiretap must include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c). The affidavit supporting an application need not show a "comprehensive exhaustion of all possible

---

[7] Gonzalez Perez cites United States v. Santana, 342 F.3d 60, 64 (1st Cir. 2003), to support his claim that probable cause as to the interceptee is required. We do not agree. As discussed, conversations necessarily involve two persons. And the statute requires the government to minimize its interception of unrelated calls; it does not require exclusion.

techniques," but need explain only the failure of those techniques "that reasonably suggest themselves." United State v. Van Horn, 789 F.2d 1492, 1496 (11th Cir. 1986).

Here, the affiant provided extensive explanation as to the techniques already employed and the reasons why the wire tap was necessary.

### 3. Minimization

Under the statute, "[e]very order and extension thereof shall . . . be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter . . . ." 18 U.S.C. § 2518(5). The Supreme Court in Scott v. United States, 436 U.S. 128, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978), set forth the standards for reviewing challenges to the government's minimization efforts: courts must make an objective assessment of the monitoring agents' actions in light of the facts and circumstances confronting them at the time. Id. at 136. The Court counseled that "[t]he statute does not forbid the interception of all nonrelevant conversations, but rather instructs the agents to conduct the surveillance in such a manner as to 'minimize' the interception of such conversations." Id. at 140. The standard to be applied to the government's actions is one of reasonableness. See United States v. Van Horn, 789 F.2d 1492, 1501 (11th Cir. 1986).

16

Notably, neither side offers any case law supporting its claims regarding whether the government could continue to intercept calls once it learned that Gonzalez Perez was the user of the phone. Here, the affidavit in support of the wiretap confirmed that the government would act to minimize interceptions by ceasing to intercept calls once it was clear that the call did not involve a participant in the scheme or involved an innocent conversation. Thus, the government was permitted to intercept calls to determine participants and properly ceased interceptions when the calls did not involve the drug organization.

4. <u>Franks</u> Hearing

In order to be entitled to relief, Gonzalez Perez must show (1) that the alleged misrepresentations or omissions were knowingly or recklessly made by the agent, and (2) that the result of excluding the alleged misrepresentations and including the alleged omissions would have been a lack of probable cause for issuance of the warrants. <u>United States v. Jenkins</u>, 901 F.2d 1075, 1080 (11th Cir. 1990). Upon review of the motion to suppress and the wiretap application, we conclude that Gonzalez Perez has not met this burden. The information concerning the 1992 indictment came from authorities in Pennsylvania. The agents did not act recklessly. Gonzalez Perez has offered nothing more than conclusory statements to establish his burden. We find such statements insufficient.

17

B. Evidentiary Issues

1. Voice Identification

Gonzalez Perez argues that the district court should not have admitted transcripts of recorded conversations without evidence that he had made the incriminating statements in the recordings. He explains that none of the speakers on the tapes identified themselves and that Diaz's testimony was insufficient to meet the government's burden to establish the identity of the speakers. The government responds that the court did not abuse its discretion because Diaz's testimony, along with other circumstantial evidence, was sufficient to establish identity.

This court has previously held that, to admit into evidence a recorded conversation, the government must establish, inter alia, the identification of the speakers.[8] United States v. Harrell, 788 F.2d 1524, 1527 (11th Cir. 1986) (citing

---

[8] The proponent who seeks to introduce written transcripts of audio tapes must introduce "some evidence that the transcripts are accurate, that the words are accurately reproduced, and the voices accurately identified." United States v. Rochan, 563 F.2d 1246, 1251 (5th Cir. 1977). Moreover, when the transcript contains a translation into English of conversations spoken in a foreign language, the proponent must introduce the testimony of a qualified witness to authenticate and verify the translation. See United States v. Llinas, 603 F.2d 506, 509 n.3, 510 (5th Cir. 1979). However, this court later explained "[w]here there is sufficient independent evidence of the accuracy of the tape recordings to insure their reliability, we will not disturb the trial court's decision to admit them even though at the time that judgment was made the government had not carried its particularized burden." United States v. Hughes, 658 F.2d 317, 323 (5th Cir.1981). Here, however, Gonzalez Perez does not raise these issues and his argument is limited to whether the government laid a proper foundation for identification of the speakers.

18

United States v. Biggins, 551 F.2d 64, 66 (5th Cir. 1977)[9] (footnote added).

A speaker's voice may be identified by opinion testimony "based upon hearing the voice at any time under circumstances connecting it with the alleged speaker." Fed.R.Evid. 901(b)(5). "Once a witness establishes familiarity with an identified voice, it is up to the jury to determine the weight to place on the witness's voice identification." Brown v. City of Hialeah, 30 F.3d 1433, 1437 (11th Cir. 1994).

Here, Gonzalez Perez challenges only whether the government properly identified the speakers. The government used testimony by Isaacs and Diaz to establish that it was Gonzalez Perez's voice on the tape. Diaz stated that he had spoken with Gonzalez Perez three times and recognized his voice. Isaacs testified that he was with Sanz when Sanz called Gonzalez Perez and he heard the conversation. The case agents further testified that the voices on the tapes belonged to Gonzalez Perez. The other evidence submitted included that Gonzalez Perez had obtained Sanz's phone, the phone was subject to the wire tap, and Gonzalez Perez admitted using the phone that was the subject of the recordings. The jury was instructed that the issue of identity was within their discretion, and a

---

[9] In Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), this court held that all decisions handed down by the former Fifth Circuit before the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit.

19

jury's credibility determinations will not be disturbed by this court. United States

v. Parrado, 911 F.2d 1567, 1571 (11th Cir. 1990). Accordingly, we find no error.

2. Diaz's testimony

Gonzalez Perez argues that the court abused its discretion by refusing to

strike Diaz's testimony because the prosecutor in Robles's trial had attacked Diaz's

testimony and credibility in closing argument. He contends that his conviction

cannot stand in light of the false or perjured testimony and the government's

inconsistent positions in the two cases. Alternatively, Gonzalez Perez asserts that

the court erred by denying his request that the court permit him to admit the

government's closing statement from Robles' trial into evidence under Fed. R.

Evid. 801(d)(2)(B) and (d)(2)(D).[10]

The government responds that the testimony was consistent with the earlier

testimony,[11] but that even if the closing statement was admissible under Rule

_____

[10] Gonzalez Perez also contends the closing statement was admissible under Rule 801(d)(2)(B)(2) as an adoptive admission. He did not raise this issue at trial. But nevertheless, his argument fails because the statement's admissibility is still subject to Rule 403's balancing test.

[11] There is no merit to Gonzalez Perez's argument that the government proffered inconsistent arguments in the two trials requiring this court strike the testimony under the doctrine of judicial estoppel. "Judicial estoppel is an equitable doctrine invoked at a court's discretion, designed to protect the integrity of the judicial process." Stephens v. Tolbert, 471 F.3d 1173, 1177 (11th Cir. 2006) (citations omitted). A district court may invoke the doctrine "to prevent a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." Id. "[T]he circumstances under which judicial estoppel should be invoked are not reducible to a general formulation of principle," but courts have traditionally looked at three factors: (1) whether a later position asserted by a party was

20

801(d), it was subject to the balancing test of Rule 403, and as such was properly excluded as potentially confusing to the jury.

In United States v. DeLoach, 34 F.3d 1001 (11th Cir. 1994), the defendant sought to have the court admit the government's closing statement from the trial of a codefendant on the grounds that the statement was inconsistent with the government's position in the current trial. This court explained that such statements are admissible where they are: "(1) 'assertions of fact' that are the 'equivalent of a testimonial statement by the [client];' and 2) 'inconsistent with similar assertions in a subsequent trial.'" Id. at 1005 (quoting United States v. McKeon, 738 F.2d 26, 33 (2d Cir. 1984).

Here, the court did not abuse its discretion by denying the motion to strike Diaz's testimony. Diaz's statements were consistent with his testimony in Robles's trial. Upon review of the records, we agree that the sequence of events was confusing and, as the government explained, it simply misunderstood Diaz's

---

clearly inconsistent with an earlier position; (2) whether a party succeeded in persuading a court to accept an earlier position, "so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled"; and (3) whether the party with an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. Id. Here, there is no reason for us to apply this doctrine. The government's statements were consistent and nothing about the statements would mislead the court or result in an unfair advantage.

testimony in the earlier trial when it made the statements during closing.[12]

Even if this evidence was admissible under Rule 801(d), the court must balance admissibility with potential prejudice. Here, the closing argument from Robles's trial would have confused or misled the jury. Thus, under Rule 403's balancing test, the court did not abuse its discretion by excluding the evidence.

C. Jury Instructions

Gonzalez Perez argues that, as a matter of law, the government had to show under § 846 that he acted "willfully" in addition to knowingly, and thus the court erred by removing the element of willfulness from the instructions. The government responds that the instruction was proper because it mirrored the statutory language. It notes that the pattern jury instruction does not trump the plain language of the statute, and that other circuits have changed the pattern instructions to reflect this.

"The district court has broad discretion in formulating jury instructions as long as those instructions are a correct statement of the law." Garcia, 405 F.3d at 1273. This court will find reversible error only if "(1) the requested instruction

_____

[12] Gonzalez Perez's reliance on United States v. Kattar, 840 F.2d 118 (1st Cir. 1988), does not persuade us otherwise. In that case, the First Circuit was "troubled" by inconsistent positions taken by the prosecutor in different trials. Nevertheless, the court concluded that there was no constitutional error where there was no showing that the false testimony influenced the verdict and the evidence of guilt was overwhelming. In the instant case, there is no evidence that Diaz's testimony was false, but rather was the likely result of a confusion, and no evidence that the government knowingly elicited false testimony.

22

correctly stated the law; (2) the actual charge to the jury did not substantially cover the proposed instruction; and (3) the failure to give the instruction substantially impaired the defendant's ability to present an effective defense." United States v. Fulford, 267 F.3d 1241, 1245 (11th Cir. 2001) (citing United States v. Martinez, 83 F.3d 371, 376 (11th Cir. 1996)).

Violations of § 846 are specific intent crimes. See United States v. Ettinger, 344 F.3d 1149, 1154 (11th Cir. 2003) (citing United States v. Cameron, 907 F.2d 1051, 1063 (11th Cir. 1990)); see also United States v. Stone, 139 F.3d 822, 833 (11th Cir. 1998) ("[t]he words '[i]t shall be unlawful for any person knowingly or intentionally to possess a controlled substance' identify the mental state and the conduct Congress intended to prohibit."). To support a conviction for conspiracy to distribute cocaine in violation of § 846, the government must prove, inter alia, that the defendant knowingly and voluntarily participated in the conspiracy. United States v. Andrews, 953 F.2d 1312, 1318 (11th Cir. 1992) (emphasis added). To prove knowing and voluntary participation, "the Government must prove beyond a reasonable doubt that [he] had a deliberate, knowing, and specific intent to join the conspiracy." United States v. Jenkins, 779 F.2d 606, 609 (11th Cir. 1986) (emphasis added); see also United States v. Davis, 583 F.2d 190, 193 (5th Cir. 1978) (discussing general conspiracy statute and

23

explaining that "the requirement of willfulness connotes a voluntary, intentional violation of a known legal duty").

District courts are not required to use the Pattern Jury Instructions, and this court has routinely approved jury instructions which did not exactly track pattern instructions. See United States v. Veltmann, 6 F.3d 1483, 1492 (11th Cir. 1993) (listing cases). Moreover, pattern jury instructions cannot trump the statute's plain language. United States v. Polar, 369 F.3d 1248, 1252 (11th Cir. 2004) (rejecting wilfulness instruction where statute indicated the element of the offense was knowingly). Thus, we conclude that the district court properly instructed the jury.

**V.**

In conclusion, we **AFFIRM** Gonzalez Perez's conviction and sentence.