**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

        v.

JESSICA DURHAM,
        *Defendant-Appellant.*

No. 05-30403

D.C. No.
CR-04-39-BLG-JDS

OPINION

Appeal from the United States District Court
for the District of Montana
Jack D. Shanstrom, Senior District Judge, Presiding

Argued and Submitted
May 4, 2006—Portland, Oregon

Filed September 22, 2006

Before: A. Wallace Tashima and William A. Fletcher,
Circuit Judges, and Louis H. Pollak,* District Judge.

Opinion by Judge Pollak

---

*Honorable Louis H. Pollak, United States District Court Judge for the
Eastern District of Pennsylvania, sitting by designation.

11883

## COUNSEL

Steven C. Babcock (argued) and Anthony R. Gallagher, Federal Defenders of Montana, Billings, Montana, for the plaintiff-appellant.

Marcia Hurd (argued) and William W. Mercer, Office of the United States Attorney, Billings, Montana, for the defendant-appellee.

## OPINION

POLLAK, District Judge:

On January 11, 2005, following a bench trial, the District Court found that defendant-appellant Jessica Durham ("Ms. Durham") knowingly distributed a small quantity of marijuana to her eighteen-month-old daughter, Michala Durham ("Michala").[1] Accordingly, Ms. Durham was convicted of knowingly and unlawfully distributing marijuana to a person under the age of twenty-one, in violation of 21 U.S.C. §§ 841(a)(1),[2] 859(a).[3] She was sentenced to a five-year term of imprisonment.[4]

On appeal, Ms. Durham argues that testimony against her was improperly admitted and that the prosecution's evidence was insufficient to support her conviction. We find these arguments lacking in merit and affirm Ms. Durham's conviction. She also argues that her five-year sentence should be vacated because the applicable statutory maximum is two

---

[1]The briefs and record refer to her, alternatively, as Michala or Michaela.

[2]21 U.S.C. § 841(a) provides, in part, that it is "unlawful for any person knowingly or intentionally — (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance . . . ."

[3]21 U.S.C. § 859(a) describes additional penalties which attach when a person who is at least eighteen years of age violates 21 U.S.C. § 841 by distributing a controlled substance to a person under the age of twenty-one.

[4]While Judge Cebull presided over Ms. Durham's trial, Judge Shanstrom presided over the sentencing.

years. With this contention, we agree. We, therefore, vacate Ms. Durham's sentence and remand for resentencing.

## I.

Events which occurred in early February 2004 form the factual predicate for Ms. Durham's conviction. We recount them here in some detail, based upon the District Court's findings of fact and our review of the record.

On February 3, 2004, Brandi Nichols visited Ms. Durham's apartment to help Ms. Durham prepare for an upcoming move out-of-state—from Montana to Washington. Ms. Nichols has a lengthy history of smoking marijuana, and testified that she had, on several prior occasions, smoked with Ms. Durham, with whom she had been friends since 2002.

Ms. Nichols testified that during her February 3rd visit she saw Ms. Durham provide Michala with a lit marijuana water pipe and allow Michala to inhale from the water pipe.[5] According to Ms. Nichols's testimony, Ms. Durham prepared the water pipe for use, before giving it to Michala, by scraping matter from the inside of the water pipe, refilling the pipe with that substance, lighting it, and sucking some smoke up through the water into the pipe.

Ms. Nichols acknowledged that she did not have any personal knowledge of how or when the water pipe had previously been used. However, she explained that, based on her extensive experience as a marijuana smoker for over twenty years, she recognized the substance which Ms. Durham scraped from the inside of the water pipe as marijuana residue —that is, the burnt residue left on or in a pipe after smoking marijuana. Ms. Nichols further observed that the residue contained "chunks" of marijuana.

---

[5]The water pipe is also referred to in the record as a "bong" or "water bong."

According to Ms. Nichols, after Michala inhaled from the water pipe, Ms. Durham and Ms. Nichols also smoked from the water pipe, which remained filled with the same burnt residue. Ms. Nichols testified she could tell—based on her familiarity with marijuana, and given the taste and smell of the substance and its effect on her—that the substance she was smoking was marijuana. In sum, Ms. Nichols opined that the substance present in the water pipe when given to Michala contained marijuana.

Ms. Nichols stated that she was upset by what she witnessed, and decided to return to Ms. Durham's apartment the following day to obtain photographic evidence. She testified that on February 4th she photographed Ms. Durham handing the water pipe, containing lit residue, to Michala, and then photographed Michala inhaling from the pipe. Ms. Durham concedes that the pictures show Michala's face "in contact with the top of a bong, and in one of those photos, the glass chamber of the bong arguably contains smoke." Defendant-Appellant's Br. at 8.[6]

On February 6th, Ms. Nichols contacted the local authorities; she provided them with the photographs and gave a statement, claiming Ms. Durham shared marijuana with her eighteen-month old daughter. Ms. Durham was arrested later that day, and Michala was removed from her custody and placed in foster care. When questioned by Jacqui Poe, a social worker from the Department of Child and Family Services ("D.C.F.S."), Ms. Durham denied having provided marijuana

---

[6]According to Ms. Nichols, Ms. Durham did not oppose the taking of photographs, and even suggested that some of the photographs might be worth submitting to "High Times," a drug paraphernalia magazine. The District Court noted, "Defendant appeared to think that Michaela [sic] smoking marijuana from the water bong was a good thing. Defendant told Nichols that Michaela [sic] ate and slept better when she was high." According to Detective Denver Cobb, Ms. Durham later made similar comments to him. *See* discussion *infra*.

to her daughter. Urinalysis of Michala conducted around February 10th was negative for narcotics, including marijuana.

On February 11th, Detective Denver Cobb interviewed Ms. Durham, and she reportedly admitted that Michala had taken up to "five hits" from the lit water pipe. According to Detective Cobb, Ms. Durham did not claim that the residue in the water pipe used by Michala was from a substance other than marijuana or that she believed it to be any other substance. Indeed, Detective Cobb's testimony indicates that Ms. Durham believed that Michala was under the influence of marijuana for at least some period of time. Ms. Durham allegedly remarked that smoking improved Michala's appetite and left Michala lethargic and mellow—a manner she found consistent with her own experience smoking marijuana.

## II.

Before trial, Ms. Durham sought to preclude Ms. Nichols's drug identification testimony—that is, Ms. Nichols's testimony that the burnt residue smoked by Michala was, in fact, marijuana. Ms. Durham argued that, as a lay person, Ms. Nichols lacked the expertise required to give that type of opinion testimony. The District Court ruled that, under the circumstances, while Ms. Nichols would not be deemed a "scientific expert in drug identification," she would be allowed to provide lay opinion testimony regarding the identity of the substance at issue.

To prove a violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 859(a), the Government was required to establish beyond a reasonable doubt: that Ms. Durham (i) knowingly and intentionally (ii) distributed[7] (iii) a controlled substance—

---

[7]As the District Court noted, distribution includes sharing and need not be for remuneration or profit. *See United States v. Pearson*, 391 F.3d 1072, 1075 (9th Cir. 2004) ("[I]n enacting § 841(a), 'Congress intended to prevent individuals from acquiring drugs for whatever purpose on behalf of others and then transferring the drugs to those others.' " (quoting *United States v. Wright*, 593 F.2d 105, 108 (9th Cir. 1979))).

in this case, marijuana—to Michala Durham; (iv) that Ms. Durham was over the age of eighteen; and (v) that Michala was under the age of twenty-one.

The District Court found that Ms. Nichols's testimony was both appropriate and credible. Combined with other evidence presented,[8] the District Court determined that the Government had satisfied its burden. Thus, the court found, beyond a reasonable doubt, that Ms. Durham, an adult, had knowingly distributed marijuana to Michala Durham, a minor.

Following the trial, the District Court ruled that 21 U.S.C. § 841(b)(4) and 21 U.S.C. § 859(a) were, in combination, the applicable sentencing statutes. Accordingly, Ms. Durham was deemed eligible for a sentence of probation and a term of imprisonment of no more than two years. However, at sentencing, the District Court imposed a five-year sentence, to be followed by four years of supervised release.

---

[8]The evidence included nine photographs showing Ms. Durham and Michala interacting with the water pipe in various ways. According to the District Court, there were photographs of Michala "smoking from the water bong."

In addition, Detective Cobb testified as to his interview with Ms. Durham; he reported that she admitted that she scraped residue into the water pipe, that Michala inhaled up to "five hits," and that she believed Michala was under the influence of marijuana.

Other prosecution witnesses included Ms. Poe, the D.C.F.S. social worker, and Mr. Handl, Ms. Durham's landlord. Ms. Poe testified regarding Michala's conduct while in foster care, following Ms. Durham's arrest: she observed that Michala slept considerably more than a normal toddler, and—for approximately two weeks after Ms. Durham's arrest — tried to inhale ("huff") from toys and other items. Mr. Handl testified that he visited Ms. Durham's apartment while she was packing—the day before she moved out—and detected the odor of marijuana, and the next day found some "marijuana seeds" on the floor while cleaning the apartment.

## III.

The District Court's construction or interpretation of either a statute or the Federal Rules of Evidence, including whether particular evidence falls within the scope of a given rule, is subject to *de novo* review. *See United States v. Leon H.*, 365 F.3d 750, 752 (9th Cir. 2004); *United States v. Sioux*, 362 F.3d 1241, 1244 n.5 (9th Cir. 2004); *United States v. Lillard*, 354 F.3d 850, 853 (9th Cir. 2003) (citing *United States v. Smith*, 282 F.3d 758, 768 (9th Cir. 2002)). Once it has been determined that challenged evidence falls within the scope of a given rule, the District Court's decision to admit the evidence is reviewed for abuse of discretion. *See Smith*, 282 F.3d at 768 (citing *United States v. Arambula-Ruiz*, 987 F.2d 599, 602 (9th Cir. 1993)).

The applicable standard for reviewing the sufficiency of the evidence to support a criminal conviction is whether " 'viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *United States v. Spears*, 631 F.2d 114, 117 (9th Cir. 1980) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

## IV.

### A. Admissibility of Ms. Nichols's Drug Identification Testimony

[1] Federal Rule of Evidence 701 allows a lay witness to give opinion testimony provided it is "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of [the witness's] testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

[2] Given the Rule's first two limitations, opinion testimony of lay witnesses must be " 'predicated upon concrete

facts within their own observation and recollection—that is facts perceived from their own senses, as distinguished from their opinions or conclusions drawn from such facts.' " *United States v. Skeet*, 665 F.2d 983, 985 (9th Cir. 1982) (quoting *Randolph v. Collectramatic, Inc.*, 590 F.2d 844, 847-48 (10th Cir. 1979)).

**[3]** The Rule's final limitation—excluding lay opinion testimony of the type that would normally fall under the purview of Rule 702[9] —was added in 2000. Ms. Durham argues that Ms. Nichols's testimony that the burnt residue was, or contained, marijuana contravened this component of Rule 701. However, the advisory committee notes discussing the 2000 amendment to Rule 701 offer this highly instructive passage:

> [C]ourts have permitted lay witnesses to testify that a substance appeared to be a narcotic, so long as a foundation of familiarity with the substance is established. *See, e.g.*, *United States v. Westbrook*, 896 F.2d 330 (8th Cir. 1990) (two lay witnesses who were heavy amphetamine users were properly permitted to testify that a substance was amphetamine; but it was error to permit another witness to make such an identification where she had no experience with amphetamines). Such testimony is not based on specialized knowledge within the scope of Rule 702, but rather is based upon a layperson's personal knowledge.

---

[9]Rule 702 governs the admissibility of testimony by qualified experts:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

**[4]** In the instant case, there was no question as to Ms. Nichols's familiarity with marijuana—in both its fresh and burnt forms.[10] Ms. Nichols's testimony was thus based upon her personal knowledge, and her first-hand, multi-sensory interaction with the substance in question: Ms. Nichols viewed the contents of the water pipe used by Michala, and Ms. Nichols then smoked from the pipe, which afforded her the opportunity to smell, taste, and experience the effects of its contents. *Cf. Westbrook,* 896 F.2d at 335-36 (allowing drug identification testimony by lay witnesses based on their having used the substance in question and experienced its effects).

Secondarily, Ms. Durham contends that Ms. Nichols's testimony should have been deemed unreliable and contrary to Rule 701's requirement that the testimony be "helpful to a clear understanding of [the witness's] testimony or the determination of a fact in issue." Fed. R. Evid. 701(b).

**[5]** The principal basis on which Ms. Durham disputes the reliability of Ms. Nichols's testimony is the allegedly contradictory testimony by the Government's forensic toxicologist, Sarah Hansen: Ms. Durham stresses that Ms. Hansen was an "expert," who testified that the chemical nature of a residue—here, whether it still contained marijuana's active ingredients—cannot be determined by looking at it or even by smoking it. The court transcript makes plain, however, that Ms. Hansen repeatedly stated that drug identification was *not* part of her

---

[10]During the trial, the District Court referred to Ms. Nichols as "expert" with regard to marijuana. However, the District Court clarified in its written orders that Ms. Nichols was to be regarded as a lay witness, not a scientific expert. We view the former as nothing more than an imprecise choice of words by the District Court in colloquy with counsel, and decline to vest the court's expression with additional, unmerited significance. It seems clear that the District Court intended only to signal to counsel that Ms. Nichols's status as someone extremely familiar with marijuana had been established—not to suggest that her testimony would be treated as that of an expert witness.

area of expertise: she testified that she had expertise regarding drug detection in biological samples (e.g., testing urine to detect drug use), but that her expertise did not extend to the testing of samples to determine whether they are controlled substances (e.g., testing residue to ascertain whether it contains marijuana). In light of this, it would not have been proper to treat Ms. Hansen's statements on this point as expert testimony.

**[6]** The District Court, in reaching its factual determinations, considered both Ms. Hansen's testimony and Ms. Nichols's testimony, made credibility determinations, and weighed the evidence.[11] We find no error.

## B.   Sufficiency of Evidence

In the instant case, the Government was required to prove beyond a reasonable doubt that Ms. Durham knowingly and intentionally distributed marijuana to Michala. On appeal, Ms. Durham makes two arguments: (i) that the substance distributed to Michala—the burnt residue—was not shown to be marijuana, and (ii) that there was no proof of ingestion by Michala. We consider these in turn.

(i)

Ms. Durham maintains that, even assuming the admissibility of Ms. Nichols's opinion testimony, the prosecution's evidence is insufficient to establish, beyond a reasonable doubt, that the residue in question was, in whole or in part, marijuana. Ms. Durham offers several reasons for this: first, she alleges that Ms. Nichols's testimony was generally "rife with inconsistency . . . exposing a bias against Ms. Durham and/or

---

[11]This court cannot substitute its own judgment of the credibility of a witness for that of the fact-finder. *See, e.g.*, *United States v. Gillock*, 886 F.2d 220, 222 (9th Cir. 1989); *United States v. Ramos*, 558 F.2d 545, 546 (9th Cir. 1977).

an exaggerated attachment to Michala that perhaps stemmed from her own unfortunate upraising [sic]"; second, she claims Ms. Nichols's testimony was contradicted by forensic toxicologist Sarah Hansen; and third, she stresses that neither the residue nor the water pipe was recovered or chemically tested. Defendant-Appellant's Br. at 42.

We find the first of these claims unpersuasive—the few inconsistencies identified by appellant are trivial, and certainly do not suggest that a rational trier of fact would necessarily have found Ms. Nichols's testimony unreliable.[12]

Ms. Durham's second claim is similarly uncompelling: to begin, Ms. Hansen's disclaimer of expertise must be taken into account, *see* discussion *supra*. More generally, even if we assume that Ms. Hansen was correct—that is, that a *conclusive* identification of the residue in question could not be accomplished through observation or ingestion—there

---

[12]Ms. Durham points to four variances in Ms. Nichols's testimony, which either are not fully contradictory or are not of substantive significance.

First, Ms. Nichols testified that she had smoked marijuana with Ms. Durham on a handful of occasions, but also testified that Ms. Durham was not really a pot smoker. Second, Ms. Nichols testified that Ms. Durham encouraged the taking of photographs on February 4th, but also admitted that Ms. Nichols herself initially suggested that photographs be taken. We do not find these statements contradictory.

Third, Ms. Durham notes that Ms. Nichols testified that she became sick after seeing Michala smoke and went home, but later testified that she smoked after Michala. In further testimony, Ms. Nichols reconciled these statements when she clarified the alleged sequence of events: after Michala smoked, Ms. Nichols and Ms. Durham took "hits." Then Michala smoked again and finally Ms. Nichols—feeling ill on account of what she had witnessed—departed.

Finally, Ms. Nichols gave inconsistent testimony about whether or not she thought a person should "fry" for sharing marijuana with his or her child. However, we are not persuaded that this bears on the reliability of Ms. Nichols's testimony.

remained additional evidence to support the District Court's determination that the elements of Ms. Durham's crime were proven beyond a reasonable doubt. *Cf. United States v. Wright*, 16 F.3d 1429, 1440 (6th Cir. 1994). In addition to testimony by Ms. Nichols and Ms. Hansen, the court heard testimony by other prosecution witnesses and was presented with photographic evidence. *See supra* note 8. The District Court made clear that it found Ms. Nichols credible, but this does not suggest that her testimony was the only evidence guiding the verdict.

Finally, Ms. Durham notes that no chemical tests were completed to determine the make-up of the substance consumed by Michala. Ms. Durham suggests that, due to the lack of chemical testing, it is impossible to know whether the residue came from the burning of something other than marijuana or whether it came from marijuana that had been so completely burned that the residue no longer contained or constituted marijuana.

The District Court, citing *United States v. Sanchez DeFundora*, properly ruled that "[t]he government need not introduce scientific evidence to prove the identity of a substance so long as there is sufficient lay testimony or circumstantial evidence from which a jury could find that a substance was identified beyond a reasonable [doubt]." *See also Tolliver v. United States*, 224 F.2d 742, 745 (9th Cir. 1955); *United States v. Traylor*, 656 F.2d 1326, 1333-34 (9th Cir. 1981); *Wright*, 16 F.3d at 1439-41; *United States v. Meeks*, 857 F.2d 1201, 1204 (8th Cir. 1988); *United States v. Eakes*, 783 F.2d 499, 504-05 (5th Cir. 1986); *United States v. Harrell*, 737 F.2d 971, 978-79 (11th Cir. 1984); *United States v. Dolan*, 544 F.2d 1219, 1221 (4th Cir. 1976).

**[7]** Ms. Nichols's extensive history as a marijuana smoker, including a number of prior experiences smoking marijuana with Ms. Durham, coupled with her consumption of the residue in question, rendered her testimony comparable to testi-

mony which has been found to support a drug identification in other cases. *See, e.g.*, *United States v. Zielie*, 734 F.2d 1447, 1456 (11th Cir. 1984) ("The uncorroborated testimony of a person who observed a defendant in possession of a controlled substance is sufficient if the person is familiar with the substance at issue."), *abrogated on other grounds*, *United States v. Chestang*, 849 F.2d 528, 531 (11th Cir. 1988); *State v. Neal*, 624 S.W.2d 182 (Mo. App. 1981); *see also United States v. Murray*, 753 F.2d 612, 615 (7th Cir. 1985) (finding evidence sufficient to support drug identification based, in particular, on the identification of the substance as marijuana by two witnesses—each with five to ten years experience smoking marijuana—who had observed that the substance in question "looked, smelled, and smoked like marijuana"); *People v. Partin*, 62 Cal. Rptr. 59 (Ct. App. 1967); *cf. People v. McLean*, 365 P.2d 403 (Cal. 1961).

[8] In addition, the District Court took note of testimony of Ms. Nichols and Detective Cobb attributing to Ms. Durham comments about the benefits—better appetite and sleep—Michala derived from smoking marijuana. *See supra* notes 6 and 8. That testimony strengthens the inference that the residue in the water pipe which Ms. Durham encouraged her daughter to inhale from was marijuana. Further, the District Court's findings included a reference to the observation of Ms. Poe, the D.C.F.S. social worker, that while Michala was in foster care she "was always very sleepy and that she would attempt to 'huff' on any number of objects by bringing it to her face and inhaling." *See supra* note 8.

[9] In sum, we are persuaded that the evidence adduced was sufficient to support the District Court's finding that the substance in the water pipe distributed to Michala was marijuana.

(ii)

Ms. Durham's second objection—based on a lack of proof of ingestion by Michala—is meritless. Ms. Durham was charged with distribution to a minor, which federal law defines as follows: "to deliver (other than by administering or dispensing) a controlled substance or a listed chemical." 21 U.S.C. § 802(11); *cf.* 21 U.S.C. § 802(2), (10) (defining "administer" and "dispense"). There is no basis on which to conclude that proof of distribution includes, as an element, proof of ingestion.[13]

(iii)

Viewing the evidence in the light most favorable to the Government, we are satisfied that a rational trier of fact could conclude that Ms. Durham knowingly and intentionally distributed marijuana to her eighteen-month old daughter.

## C.   Sentencing

Ms. Durham was sentenced by the District Court to a prison term of five years, to be followed by a term of supervised release of four years.

---

[13]Relatedly, Ms. Durham questions the admissibility of Ms. Nichols's testimony that Michala inhaled the marijuana, on the grounds that Ms. Nichols does not have specialized knowledge regarding the pulmonary capacity of an eighteen-month old child. To the extent that Ms. Nichols relayed what she witnessed—by testifying, for example, that she saw Michala blow smoke out of her mouth—the testimony is admissible. *Cf. Skeet*, 665 F.2d at 985. To the extent that any of Ms. Nichols's testimony attempted to draw conclusions about the extent to which Michala successfully ingested the marijuana, it would be beyond the scope of appropriate lay opinion testimony. However, such testimony would, in any case, be irrelevant since actual ingestion is not an element of the crime of distribution with which Ms. Durham was charged and of which she was found guilty.

On appeal, Ms. Durham contends that, under a proper reading of the several interconnected statutory provisions governing sentencing for the offense committed by Ms. Durham, the District Court was without authority to impose a prison term longer than two years.

Analysis begins with subsection (a) of section 841 of Title 21; subsection (a) provides, in pertinent part: "[I]t shall be unlawful for any person knowingly or intentionally — (1) to . . . distribute, . . . or possess with intent to . . . distribute, . . . a controlled substance." 21 U.S.C. § 841(a). Subsection (b) of 21 U.S.C. § 841 establishes "Penalties" for "any person who violates subsection (a) of this section." Subsection (b) provides, in pertinent part:

> (b) Except as otherwise provided in section 859, 860, or 861 of this title, any person who violates subsection (a) of this section shall be sentenced as follows:

> (1) . . . .

> (D) In the case of less than 50 kilograms of marihuana, . . . such person shall, except as provided in paragraphs (4) and (5) of this subsection, be sentenced to a term of imprisonment of not more than 5 years, a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18, or $250,000 if the defendant is an individual . . . , or both. . . .

> . . . .

> (4) Notwithstanding paragraph (1)(D) of this subsection, any person who violates subsection (a) of this section by distributing a small amount of marihuana for no remuneration shall be treated as pro-

vided in section 844 of this title and section 3607 of
Title 18.

**[10]** If analysis were to be confined to the first sentence of
paragraph D of subsection (b)(1) of section 841, *see* 21 U.S.C.
§ 841(b)(1)(D), it would appear that Ms. Durham, a first
offender, could be sentenced to a prison term of up to five
years—the term the District Court imposed. But since it is
undisputed that Ms. Durham's offense consisted of "distribut-
ing a small amount of marihuana for no remuneration," within
the meaning of subsection (b)(4) of section 841, *see* 21 U.S.C.
§ 841(b)(4), Ms. Durham contends that, pursuant to that sub-
section's directive, she should, for sentencing purposes, "be
treated as provided in section 844 of this title and section
3607 of Title 18." In the case of first offenders, 21 U.S.C.
§ 844 establishes a maximum prison term of one year and a
minimum fine of $1000,[14] while 18 U.S.C. § 3607 authorizes
"probation for a term of not more than one year without enter-
ing a judgment of conviction."[15]

---

[14]21 U.S.C. § 844(a) states, as the penalty for a first offense of simple
possession:

> Any person who violates this subsection may be sentenced to a
> term of imprisonment of not more than 1 year, and shall be fined
> a minimum of $1,000, or both . . . . Further, upon conviction, a
> person who violates this subsection shall be fined the reasonable
> costs of the investigation and prosecution of the offense, includ-
> ing the costs of prosecution of an offense as defined in sections
> 1918 and 1920 of Title 28, except that this sentence shall not
> apply and a fine under this section need not be imposed if the
> court determines under the provision of Title 18 that the defen-
> dant lacks the ability to pay.

[15]18 U.S.C. § 3607(a) provides, with regard to sentencing:

> If a person found guilty of an offense described in section 404 of
> the Controlled Substances Act (21 U.S.C. 844)—

> (1) has not, prior to the commission of such offense, been con-
> victed of violating a Federal or State law relating to controlled
> substances; and

However, to complete the analysis, account must also be taken of another statute, 21 U.S.C. § 859. This is because subsection (b) of section 841, *see* 21 U.S.C. § 841(b), begins with a phrase—"Except as otherwise provided in section 859, 860, or 861 of this title"—which qualifies the language of subsection 841(b) that follows. It is undisputed that sections 860 and 861 are without application to this case. Subsection 859(a) provides, in relevant part, as follows:

> Except as provided in section 860 of this title, any person at least eighteen years of age who violates section 841(a)(1) of this title by distributing a controlled substance to a person under twenty-one years of age is . . . subject to (1) twice the maximum punishment authorized by section 841(b) of this title, and (2) at least twice any term of supervised release authorized by section 841(b) of this title, for a first offense involving the same controlled substance and schedule.

Appellant and the Government agree that section 859 applies, but they differ as to how it applies.

---

(2) has not previously been the subject of a disposition under this subsection;

the court may, with the consent of such person, place him on probation for a term of not more than one year without entering a judgment of conviction. At any time before the expiration of the term of probation, if the person has not violated a condition of his probation, the court may, without entering a judgment of conviction, dismiss the proceedings against the person and discharge him from probation. At the expiration of the term of probation, if the person has not violated a condition of his probation, the court shall, without entering a judgment of conviction, dismiss the proceedings against the person and discharge him from probation. If the person violates a condition of his probation, the court shall proceed in accordance with the provisions of section 3565.

**[11]** Ms. Durham points out that a first offender who "distribut[ed] a small amount of marihuana for no remuneration," 21 U.S.C. § 841(b)(4), is subject, pursuant to 21 U.S.C. § 844 to a prison term of up to a year. But, conceding that she was older than eighteen and was found to have distributed marijuana to a person younger than twenty-one, Ms. Durham acknowledges that section 859 operates to authorize a maximum sentence "twice the maximum punishment authorized by section 841(b) of this title . . . for a first offense involving the same controlled substance and schedule." Accordingly, in appellant's view, the District Court had authority to impose a prison term of up to, but not more than, two years.

The Government contends that the number of years to be doubled is not "one" but "five," the maximum term authorized by subsection (b)(1)(D) of section 841, *see* 21 U.S.C. § 841(b)(1)(D), for a first-time offender who has distributed less than fifty kilograms of marijuana.

If subsection 841(b)'s incorporation of section 859 were limited to 841(b)(1), the Government's argument would be persuasive. But, as noted *supra*, section 859 appears at the very beginning of subsection 841(b), operating as a qualification of the entirety of that subsection, including section 841(b)(4). And, also as noted *supra*, 21 U.S.C. § 841(b)(4) directs that a "person who violates subsection (a) of this section by distributing a small amount of marihuana for no remuneration shall be treated as provided in section 844 of this title," which establishes a one-year maximum prison term.

**[12]** Thus, section 859's doubling provision authorized a prison sentence for Ms. Durham of no greater than two years. Because the District Court imposed a prison sentence of five years, we vacate Ms. Durham's sentence and remand this case to the District Court for resentencing.

## CONCLUSION

For the reasons stated above, defendant's conviction is AFFIRMED; defendant's sentence is VACATED and the

matter REMANDED for resentencing consistent with this opinion.

**CONVICTION AFFIRMED; SENTENCE VACATED and REMANDED.**