918 A.2d 543

**In re ONDREL M.**

**No. 2898 Sept. Term, 2005.**

Court of Special Appeals of Maryland.

March 12, 2007.

224

Julia C. Schiller (Nancy S. Forster, Public Defender, on the brief), Baltimore, MD, for Appellant.

Gary E. O'Connor (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, MD, for Appellee.

Panel: KRAUSER, WOODWARD, and WILLIAM W. WENNER (Retired, Specially Assigned), JJ.

WOODWARD, Judge.

On July 21, 2005, in a Juvenile Petition filed in the Circuit Court for Anne Arundel County, sitting as a juvenile court, appellant, Ondrel M., was charged with possessing a controlled dangerous substance, namely, marijuana, which if he were an adult, would violate Maryland Code (2002, 2006 Supp.), § 5–601 of the Criminal Law Article.[1] In an adjudica-

---

1. Section 5–601 provides, in pertinent part:

tory hearing held before a master on September 21, 2005, appellant was found to have committed the delinquent act [2] of possessing marijuana and was adjudged at disposition to be a child in need of guidance, treatment, or rehabilitation.[3] After an exceptions hearing on December 12, 2005, the circuit court affirmed the master's findings, conclusions, and disposition. Thereafter, appellant filed this timely appeal and presents this Court with the following questions:

1. Did the trial court err in finding that the evidence was sufficient to sustain a finding that [appellant] was in possession of marijuana?

2. Did the trial court err in allowing a police officer to testify, based on his training, knowledge, and experience as a police officer, that he detected an odor of marijuana?

For the reasons set forth herein, we affirm the judgment of the circuit court.

## BACKGROUND

Appellant's delinquency adjudication and disposition arose from a high speed chase that ended at approximately 1:00 a.m. on May 16, 2005, when the four-door maroon Mercury Mystique in which appellant was riding was finally stopped on Route 2 in Anne Arundel County. At the adjudicatory hear-

---

(a) *In general.*—Except as otherwise provided in this title, a person may not:

(1) possess or administer to another a controlled dangerous substance, unless obtained directly or by prescription or order from an authorized provider acting in the course of professional practice. . . .

\* \* \*

(c) *Penalty; medical necessity.* (1). . . .

(2) A person whose violation of this section involves the use or possession of marijuana is subject to imprisonment not exceeding 1 year or a fine not exceeding $1,000 or both.

2. A "delinquent act" is defined as "an act which would be a crime if committed by an adult." Md. Code (1974, 2006 Repl. Vol.), § 3–8A–01(*l*) of the Courts and Judicial Proceedings Article.

3. A "delinquent child" is defined as "a child who has committed a delinquent act and requires guidance, treatment, or rehabilitation." *Id.* at § 3–8A–01(m).

ing, held on September 21, 2005, the sole witness was Anne Arundel County police officer Brett Tawes.[4] According to Officer Tawes, there were four occupants in the car, and appellant was the front seat passenger. When Officer Tawes, along with other officers, finally stopped the car after the chase, the driver continued to accelerate up a hill, pushing two police cars with his car. Because the driver failed to stop and all of the occupants "were not opening the windows[,]" the officers had to "take out all of the windows of the vehicle" in order to reach into the car and turn off the ignition.

Upon approaching the vehicle, Officer Tawes smelled an odor of marijuana emanating from inside. Officer Tawes testified that in his training at the police academy and in his work in the field as a police officer, he had been exposed previously to the smell of burning marijuana and therefore could recognize its smell.[5] He then described the smell as he approached the car as "a burning type of weed . . . not a smell of tobacco smoke[,]" that he "thought it would be marijuana." All four occupants were removed from the vehicle and detained while a search was conducted. The search revealed a green leafy substance, later identified as marijuana, in the middle of a crumpled one-quarter or one-half sheet of newspaper lying behind the driver's seat on the floor.[6] The police

---

4. At the hearing, appellant stipulated that there was probable cause for the police to stop the car.

5. Officer Tawes was not admitted as a drug recognition expert.

6. On the floor next to the crumpled piece of newspaper, Officer Tawes found a partially smoked cigarette with a green leafy substance in it that he believed to be marijuana. Officer Tawes also found, in the open mesh pocket on the back of the passenger seat, an open, aluminum Sprite can with a plastic baggie sticking out of the opening. When the baggie was removed from the can, it contained two cigarettes with a green leafy substance in them that Officer Tawes believed to be marijuana.

   The green leafy substance in the cigarettes apparently was never tested by a chemist and thus never definitively determined to be marijuana. Only the green leafy substance in the newspaper was tested and found to be 0.59 grams of marijuana. Appellant contends that, in determining the sufficiency of the supporting his conviction, this Court

also discovered two pellet guns, one under the driver's seat and the other under the front passenger seat where appellant was sitting. No drugs were found on appellant's person. On cross-examination, Officer Tawes stated that "[t]here was trash everywhere in the car." The pursuit and subsequent stop of the car caused damage to a total of five police cars.[7]

At the close of the State's case, appellant made a motion for judgment of acquittal, which the master denied. The master determined that appellant had been in possession of marijuana and thus was guilty of a delinquent act. Thereafter, at the disposition hearing, the master found appellant to be a child in need of guidance, treatment, or rehabilitation. The master ordered appellant to spend the rest of the day in lock-up and suspended any further commitment in favor of probation until October 31, 2005.[8]

---

cannot consider the cigarette found on the backseat floor, or the two cigarettes located in the baggie, because "they were never tested by a chemist and therefore, not confirmed to marijuana." The State responds simply by claiming that appellant failed to cite any authority for his position. We hasten to note that there is authority, from both federal and state courts, that the testimony of a witness, who is familiar with marijuana through past experience, that the substance in question was marijuana, is admissible into evidence to support a finding that the accused was in possession of marijuana. *See, e.g., United States v. Durham,* 464 F.3d 976, 982 (9th Cir.2006); *Osbourn v. State,* 92 S.W.3d 531, 538 (Tex.Crim.App.2002).

We do not need to resolve this issue, and thus express no opinion on it, because, as stated *infra,* we conclude that the evidence is sufficient to sustain appellant's adjudication of involvement without consideration of the location or contents of the cigarettes found in the car. Accordingly, our discussion of the facts and analysis of the law in the case sub judice will not be based on a consideration of the cigarettes containing what Officer Tawes believed, but was not confirmed by chemical analysis, to be marijuana.

7. According to the prosecutor, "[a] number of [police] cars were totaled."

8. Appellant was scheduled for a probation review on October 31, 2005, at which time, if he was not in compliance with the terms of his probation, the master would strike the suspension and commit appellant to the Department of Juvenile Services for non-community residential placement.

On September 29, 2005, appellant filed a notice of exceptions to the findings and conclusions of the master at the adjudicatory hearing. On December 12, 2005, a hearing on the exceptions was held, and in an Order dated the same day, the circuit court denied the exceptions and affirmed the decision of the master. Appellant filed a timely Notice of Appeal on December 29, 2005.

## DISCUSSION

### I

### Sufficiency of the Evidence

### A

### Standard of Review

The standard of review of the sufficiency of the evidence is well established. In *State v. Smith*, 374 Md. 527, 533–34, 823 A.2d 664 (2003), the Court of Appeals stated:

The standard for appellate review of evidentiary sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Weighing the credibility of witnesses and resolving any conflicts in the evidence are tasks proper for the fact finder. We give due regard to the [fact finder's] findings off acts, its resolution of conflicting evidence, and, significantly, its opportunity to observe and assess the credibility of witnesses. We do not reweigh the evidence, but we do determine whether the verdict was supported by sufficient evidence, direct or circumstantial, which could convince a rational trier of fact of the defendant's guilt of the offenses charged beyond a reasonable doubt. A valid conviction may be based solely on circumstantial evidence. The same standard applies to all criminal cases, including those resting upon circumstantial evidence, since, generally, proof of guilt based in whole or in part on evidence is no different from proof of guilt based on direct eyewitness accounts.

(Alteration in original) (citations omitted) (internal quotations omitted).

■ "This same standard of review applies in juvenile delinquency cases. In such cases, the delinquent act, like the criminal act, must be proven beyond a reasonable doubt." *In re Timothy F.*, 343 Md. 371, 380, 681 A.2d 501 (1996) (citation omitted). Further, we are cognizant of the principle that

[a] trial court fact-finder, i.e., judge or jury, possesses the ability to "choose among differing inferences that might possibly be made from a factual situation" and this Court must give deference to all reasonable inferences the fact-finder draws, regardless of whether we would have chosen a different reasonable inference.

*State v. Suddith*, 379 Md. 425, 430, 842 A.2d 716 (2004) *(quoting Smith*, 374 Md. at 534, 823 A.2d 664).

## B

Appellant argues that the evidence was insufficient to sustain the master's finding that he committed the delinquent act of possessing marijuana because "[t]he State's case failed to establish that [appellant] knew of the presence of the marijuana in rear of the vehicle or that he exercised actual or constructive control over the marijuana[ ]" based on "[t]he mere fact that [ ] [he] was present in the vehicle[.]" In particular, appellant points to the fact that only a very small quantity of marijuana was found "in the middle of a crumpled up piece of newspaper, located on the floor, behind the driver's seat, in a vehicle that had garbage located throughout it."

The State maintains that "[t]he evidence was sufficient to [appellant's] possession of the marijuana found in the vehicle" in which appellant was a passenger. In particular, the State asserts:

[T]he occupants [of the car] were aware that the police were chasing them, the marijuana was in easy reach of [appellant], and it is reasonable to infer that the occupants of the

car knew that if they were stopped, the odor or marijuana would alert an officer to the presence of the drugs.

In rendering her findings at the hearing, the master stated: What we have here is a situation that I think is probably closer to the [*State v. Suddith*] case where a passenger in the vehicle claimed not to have any knowledge of marijuana after a vehicle—I believe that one was a stolen vehicle and a pursuit and a crash and stuff comes spilling out of the vehicle.

And as I recall, nothing in particular was found on that individual, but there was sufficient evidence, based on material that was in there and the fact that they were in the vehicle. We are not talking about a locked box in the tru[n]k of the.

The officer's testimony may be convenient as to smelling marijuana, but it is certainly not rebutted. So, it gives some indication that all state there was knowledge, if not [ ] indeed some degree of participation, as some of the cases say, in the mutual enjoyment of the contraband.

So, the smell gives rise to at least an indication of knowledge. He is in the vehicle. There is CDS in the back ... to his left in the passenger side. That, the drugs, the smell of marijuana, indicate to me that, again, knowledge of the material in the vehicle; in proximity to the material.

The material was not locked away and not secreted in any particular form. It was held, yes, but I think it is enough.

■■■ Section 5–101(u) of the Criminal Law Article of the Maryland Code defines possession as "exercis[ing] actual or constructive dominion or control over a thing by one or more persons." "Dominion or control" over a controlled dangerous substance within the meaning of the statute requires the accused to have " 'exercised some restraining or directing influence over it.' " *State v. Leach,* 296 Md. 591, 596, 463 A.2d 872 (1983)(quoting *Garrison v. State,* 272 Md. 123, 142, 321 A.2d 767(1974)). An accused also must have "knowledge" of the contraband. That is, the accused "must know of both the presence and the general character or illicit nature of the

substance." *Dawkins v.State,* 313 Md. 638, 651, 547 A.2d 1041 (1988). "[S]uch knowledge may be proven by circumstantial evidence and by inferences drawn therefrom." *Id.*

■ Further, "[i]t has long been established that the mere fact that the contraband is not found on the defendant's person does not necessarily preclude an inference by the trier of fact that the defendant had possession of the contraband." *Suddith,* 379 Md. at 432, 842 A.2d 716. However, " '[c]ircumstantial evidence which merely arouses suspicion or leaves room for conjecture is obviously insufficient. It must do more than raise the possibility or even the probability of guilt. [I]t must ... afford the basis for an inference of guilt beyond a reasonable doubt.' " *Taylor v. State,* 346 Md. 452, 458, 697 A.2d 462 (1997) (alterations in original) (quoting 1 UNDERHILL, CRIMINAL EVIDENCE § 17, at 29 (6th ed. 1973)).

In our recent case of *Larocca v. State,* 164 Md.App. 460, 473, 883 A.2d 986, *cert. denied,* 390 Md. 285, 888 A.2d 342 (2005), we stated that the following factors are relevant to determining the issue of possession:

    1) proximity between the defendant and the contraband, 2) the fact that the contraband was within the view or otherwise within the knowledge the defendant, 3) ownership or some possessory right in the premises or the automobile in which the contraband is found, or 4) the presence of circumstances from which a reasonable inference could be drawn that the defendant was participating with others in the mutual use and enjoyment of the contraband.

We find *Larocca* to be the most factually apposite case to the case *sub judice.* In *Larocca,* two undercover police officers were in a high drug area conducting a "trash pull." *Id.* at 466, 883 A.2d 986. One of the officers observed the appellant exit and then re-enter a Honda Civic, and upon the appellant's re-entry into the vehicle, smelled burning marijuana. *Id.* The officer did not see the appellant carrying or holding anything when the appellant exited and reentered the vehicle, and could not see inside the vehicle because its windows were tinted and the rear window was covered with snow. *Id.* According to the testimony of the two other passengers in the, a marijuana

blunt was being smoked and passed between those two passengers in the vehicle, neither of whom was the appellant. *Id.* The officer witnessing the above events told the other officer what he had seen and smelled. *Id.* They then requested a uniformed colleague to pull over the car, and it took that uniformed officer about three to five minutes to make the traffic stop. *Id.* at 466–67, 883 A.2d 986. Upon the request of the two undercover officers, the three persons inside the vehicle rolled down the windows, and there was an "odor of burnt marijuana coming from inside the car." *Id.* at 467, 883 A.2d 986. The appellant was seated in the front passenger seat and a search of his person revealed no drugs or paraphernalia. *Id.* at 465, 467, 883 A.2d 986.

A subsequent search of the car revealed a white, "opaque" plastic bag containing five individually wrapped baggies of located on the floor underneath the appellant's seat "near the edge of the seat, in the area immediately behind and next to where the appellant's legs had been when he was seated." *Id.* at 467–68, 883 A.2d 986. None of the car's occupants claimed ownership of the white bag of marijuana at the time of the stop. *Id.* at 468, 883 A.2d 986. The appellant was arrested and charged with possession of marijuana with intent to distribute and possession of marijuana. *Id.* The circuit court found the appellant guilty of both counts. *Id.* at 471, 883 A.2d 986.

On appeal, the appellant claimed that the evidence was legally insufficient to support his conviction for possession with intent distribute, maintaining that his mere proximity to the drugs was not enough to support a finding that he knew that illicit drugs were present in the car. *Id.* In considering the factors of proximity and knowledge, this Court pointed out that "the white bag was not concealed or hidden, or in another room of a house. It was located immediately underneath the appellant's seat in a small car, in arm's reach, where it was readily accessible to him but not to other occupants of the vehicle." *Id.* at 476, 883 A.2d 986. We then stated that "the white bag was not personal to someone other than the appellant, to a particular occupant of the car, or to anyone[,]" and

thus it was not "[t]he kind of evidence that ... negated any reasonable inference of knowledge and possession...." *Id.* We reiterated the principle that "[l]ine of sight or plain view evidence is not essential to show knowledge of the presence of contraband, however. When an object is out of sight, it is not necessarily 'out of mind.'" *Id.* at 478–79, 883 A.2d 986.

Regarding the evidence of the appellant's mutual use and enjoyment of the drugs, we opined:

There was direct evidence that marijuana was being smoked in a communal fashion in the passenger compartment of the small vehicle, with the windows rolled up.

.... [I]t is common knowledge that people use marijuana by sharing a single cigarette and inhaling the smoke from the cigarette and the ambient smoke. A fact-finder reasonably could credit that part of the evidence showing that the marijuana blunt was being smoked and shared inside the Honda, discredit the testimony that the appellant merely watched as that happened, and conclude that the appellant was sharing in the blunt as well. Even if the blunt were not passed to the appellant, however, *the evidence showed that he was participating in its use baby sitting in the closed, small space and breathing marijuana smoke. Certainly, he knew by his senses of sight and smell that marijuana was in the car and was being used.*

*Larocca,* 164 Md.App. at 479–80, 883 A.2d 986 (emphasis added) (footnote omitted).

Furthermore, we considered, as an additional relevant factor, evidence tending to show that the vehicle occupants were likely to be involved in a drug-related common enterprise. We said:

In *State v. Suddith* ... the Court of Appeals held that the observation in [*Maryland v. Pringle,* 540 U.S. 366, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003)], that car occupants are likely to be involved in a common enterprise, is relevant to a sufficiency of the evidence assessment. Although the *Pringle* case addresses probable cause, it nevertheless establishes generally the reasonableness, and hence permissibility, of an inference that people who know each other and are traveling

in a car in circumstances indicating drug using or selling activity are operating together, and thus are sharing knowledge of the essentials of their operation.

*Id.* at 481, 883 A.2d 986 (citations omitted).

Applying this factor to the facts in *Larocca,* we stated:

Here, the circumstances permitted an inference that the three occupants in the Honda were engaged in a marijuana-focused common enterprise. They knew each other; were together in a small car; the driver was making a stop for one of the passengers (the appellant), in a neighborhood where illegal drugs were a serious enough problem to have undercover officers assigned to a trash pulling detail; there was communal marijuana smoking inside the car; the driver had rolling papers; and the back seat passenger had marijuana on his person.

*Id.*

Upon consideration of all of the factors relevant to determining the issue of possession, we concluded:

These facts, pertaining to immediate and primary proximity, knowledge based on location and accessibility, the absence of a personal link between the contraband and a particular person, mutual use and enjoyment of contraband, and common, viewed in combination, permitted a inference that the appellant knew of the presence of the bag of marijuana, and its illicit character, and exercised dominion and control over it. Thus, a reasonable fact-finder could infer, from the circumstantial evidence presented here, that the appellant was in possession of the white bag of marijuana.

*Id.* at 482, 883 A.2d 986.

■ Based on our opinion in *Larocca,* and viewing the evidence in light most favorable to the State, we conclude that the evidence the case *sub judice* was sufficient for the trier of fact to conclude that appellant was in possession of marijuana beyond a doubt.

First, as to the proximity factor, the marijuana in the crumpled newspaper was found on the floor directly behind

the driver's seat, which was within appellant's easy reach. While the drugs were closer to the appellant in *Larocca* by being immediately underneath his seat, the marijuana here was still readily accessible to appellant. Moreover, like *Larocca*, none of the occupants claimed any possessory interest in the marijuana contained in the newspaper at the time of the stop.

Second, regarding the knowledge of the contraband, the drugs in the instant case were not hidden from appellant's view as was the bag of drugs in *Larocca*. Here, the newspaper containing the was in plain view on the floor behind the driver's seat. Although Officer Tawes testified that there was trash throughout the vehicle, he did not testify that the trash covered or otherwise obscured appellant's view of the newspaper. Moreover, the odor of emanating from the vehicle, as well as appellant's apparent refusal to roll down his window when the police were attempting to stop the car, permitted the fact-finder to infer that appellant knew of the marijuana's presence in the vehicle.

Third, as in *Larocca*, appellant in the case sub judice did not have ownership or some possessory right in the vehicle in which the contraband was found. Fourth, concerning evidence of mutual use and of the drugs, the testimony of Officer Tawes that he smelled the odor of marijuana upon approach of the car supports an inference that appellant was engaged in mutual use and enjoyment of. As we stated in *Larocca:* "Certainly, [the appellant] knew by his senses of sight and smell that marijuana was in the car and was being used." *Id.* at 479–480, 883 A.2d 986. At oral argument, appellant's counsel correctly observed that in *Larocca* there was direct evidence of smoking and passing of a marijuana blunt between two of vehicle's occupants, and that no such evidence exists in the instant case. Nevertheless, the inference of mutual use and becomes reasonable upon consideration of Officer Tawes's description of the odor of marijuana as "a burning type of weed ... not a smell of tobacco smoke."

Finally, the evidence makes it reasonable to infer that appellant and the other occupants of the car in the instant

case were "engaged in a marijuana-focused common enterprise." *Id.* at 481, 883 A.2d 986. When the police attempted to stop the vehicle, the driver of car refused to stop and engaged the police in a high speed chase. Once the car was blocked by police, the driver still refused to stop, and pushed the car against two police cars up a hill, with tires spinning, in an attempt to escape. When the officers approached, none of the occupants would roll down the windows. The officers had to break out all of the windows, reach in, and turnoff the ignition in order to stop the car. A search of the vehicle then revealed the presence of not only marijuana, but two pellet guns—one under the driver's seat and the other under appellant's seat. These facts support the inference that all of the occupants, including appellant, wanted to escape being pulled over by the for fear of being caught possessing marijuana and thus they were engaged in a marijuana-focused common enterprise.

## II

Appellant assigns error to the admission of Officer Tawes's testimony "as to his conclusion that the odor he smelled upon approaching the vehicle was marijuana." Specifically, relying on *Ragland v. State*, 385 Md. 706, 870 A.2d 609 (2005), appellant maintains that this conclusion "was based upon [Officer Tawes's] training, knowledge, and experience as a police officer[,]" and consequently, that this constituted expert testimony. Because the State failed to identify Officer Tawes as an expert or give appellant notice that he was being called as an expert, appellant claims error that requires reversal.

The State responds that the court did not err in allowing Officer Tawes to testify as to his opinion that he smelled marijuana because "[a] lay person may properly testify, based on previous experience, that he or she smelled marijuana." Accordingly, Officer Tawes's testimony was proper lay opinion testimony, and compliance with the Maryland Rule regarding expert testimony was not required.

Maryland Rule 5–701 governs the admissibility of lay opinion. It states:

If the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2)helpful to a clear understanding of the witness's or the determination of a fact in issue.

Maryland Rule 5–702 governs the admissibility of expert testimony. It states:

Expert testimony may be admitted, in the form of an opinion or otherwise, if the court determines that the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue. In making that determination, the court shall determine (1)whether the witness is qualified as an expert by knowledge, skill, experience, training, over caution, (2) the appropriateness of the expert testimony on the particular subject, and (3)whether a sufficient factual basis exists to support the expert testimony.

At the September 21, 2005 adjudication hearing, the following colloquy took place during the testimony of Officer Tawes:

[PROSECUTOR]: And what, if any, observations did you personally make when you approached the vehicle?

[OFC. TAWES]: When I approached the vehicle, I could smell an odor of marijuana coming from the vehicle.

\* \* \*

[DEFENSE COUNSEL]: Your Honor, I object. This individual is not a drug recognition expert;therefore, it is a conclusion and it should not be considered fact.

THE COURT: I will sustain. You can establish a basis.

[PROSECUTOR]: Okay. How long have [you] been a police officer with the Anne Arundel County Police?

[OFC. TAWES]: Eight years.

[PROSECUTOR]: Okay. And what training have you had in the detection of controlled dangerous substances, specifically marijuana?

[OFC. TAWES]: Training in the Academy for recognition and numerous arrests since then.

* * *

[PROSECUTOR]: Okay. And your training to the detection of marijuana, what did it consist of?

[OFC. TAWES]: Exposure to the drug, the smell of it, exposure to the burning marijuana and showing us what the drug looked like in all forms by our narcotics officers from our department.

* * *

[DEFENSE COUNSEL]: May I ask one voir dire question?

THE COURT: Yes.

[DEFENSE COUNSEL]: Officer, do you have a certification saying you are a drug expert, a drug recognition expert?

[OFC. TAWES]: No.

[DEFENSE COUNSEL]: Thank you. The objection is still made.

THE COURT: Well, if I understood the testimony correctly, Officer, you said you have had training in smelling burning marijuana or you smelled it?

[OFC. TAWES]: Yes, ma'am. We were exposed to it. Yes, ma'am.

THE COURT: You can rephrase your question and ask him what it smelled like, and I don't think there is any problem with it.

[PROSECUTOR]: What did it smell like to you when you approached the car?

[OFC. TAWES]: It was—it smelled like a burning type of weed, and it wasn't the same type of—it's not a smell of tobacco smoke.

[PROSECUTOR]: And was that smell consistent with your prior training?

[OFC. TAWES]: Yes ma'am.

[PROSECUTOR]: And that would have been?

[OFC. TAWES]: I believe that I—I thought it would be marijuana. I suspected it to be marijuana in the car.

In *Ragland,* 385 Md. at 716, 870 A.2d 609, the Court of Appeals held that the trial court erred in admitting, as lay opinion testimony, the testimony of two police officers characterizing the nature of a transaction that they had witnessed as a "drug transaction." The Court held that their testimony was expert testimony because the opinions of the officers "were based on [their] . . . specialized knowledge, experience, and training." *Id.* at 725–26, 870 A.2d 609. In reaching this holding, the Court analyzed Maryland Rules 5–701 and 5–702 and determined that, because of the similarities between Federal Rule of Evidence 701 and Maryland Rule 5–701, "judicial decisions construing Fed.R.Evid. 701 often provide persuasive authority for the interpretation of Md. Rule 5–701." *Id.* at 720, 870 A.2d 609. Consequently, the Court adopted "the approach as reflected in the 2000 amendment to Fed.R.Evid. 701 and h[e]ld that Md. Rules 5–701 and 5–702 prohibit the admission as 'lay opinion' of testimony based upon specialized knowledge, skill, experience, training or education." *Id.* at 725, 870 A.2d 609 (footnote omitted). By contrast, lay opinion, according to the Court, is "testimony that is rationally based on the perception of the witness." *Id.* at 717, 870 A.2d 609.

The issue of whether a police officer's testimony regarding the odor of marijuana is expert or lay opinion testimony has not been addressed heretofore by any Maryland appellate opinion. Case law outside of Maryland, especially courts interpreting Federal Rule 701 or a state rule similar to Federal Rule 701, is instructive.

In *United States v. Santana,* 342 F.3d 60, 68 (1st Cir.2003), *cert. denied,* 540 U.S. 1206, 124 S.Ct. 1478, 158 L.Ed.2d 129 (2004), the appellant alleged, inter alia, that it was error for the district court to allow the testimony of a DEA agent that the agent could smell marijuana because it was not lay opinion testimony under Federal Rule 701; rather, it was an expert opinion. The United States Court of Appeals for the First Circuit disagreed. It held:

It is axiomatic that a witness may testify as to his personal knowledge—here, what he smelled. *There was a sufficient*

*foundation for this testimony because [the DEA agent] testified that his job exposed him to marijuana,* and another witness testified that marijuana residue was found on the wrapper.... However, [the DEA agent's]testimony as to what he smelled was based on his perception and therefore he was not required to qualify as an expert under Rule 702. It was not an abuse of discretion to admit [the DEA agent's] lay opinion testimony that he smelled marijuana during a search of Nickerson's home.

*Id.* at 68–69 (emphasis added) (citations omitted).

In *Osbourn v. State,* 92 S.W.3d 531, 535 (Tex.Crim.App. 2002), the appellant argued that the Court of Appeals erred when it upheld the admission of the testimony of a police officer, as lay opinion, identifying the smell of marijuana, because the police officer's opinion was "based on the training she received at the police academy and the experience she gained during her three years as a police officer" and was thus expert opinion testimony. While the Texas Court of Criminal Appeals based its holding on Texas Rule of Evidence 701 (lay opinion testimony), the Court noted that the Texas Rule "is similar to the Federal Rule" and therefore focused its analysis on cases interpreting the federal rule. *Id.* at 537 n. 4.

The Texas Court of Criminal Appeals opined:

It does not take an expert to identify the smell of marihuana smoke. Testimony as to the identity of an odor is admissible in some instances even though the person testifying is not an expert. While smelling the odor of marihuana smoke may not be an event normally encountered in daily life, it requires limited, if any, expertise to identify. Although it cannot be presumed that everyone is capable of identifying marihuana by smell, a witness who is familiar with the odor of marihuana smoke through past experiences can testify as a lay witness that he or she was able to recognize the odor.

*Id.* at 537 (citations omitted). The Court then concluded:

Here, [the police officer] participated in the events about which she testified and her opinion was based on what she

perceived at the scene of traffic stop. That is, she smelled an odor that she recognized as marihuana smoke. And, the was helpful to the determination of a fact in issue (i.e., whether appellant was in of marihuana). Her belief or inference that the substance was marihuana was based on identifiable facts that were within her personal knowledge such as the green, leafy appearance and distinct odor. Unlike other drugs that may require chemical analysis, marihuana has a distinct appearance and odor that are familiar and easily recognizable to anyone who has encountered it. So [the officer's] opinion that appellant possessed marihuana, based on the odor she smelled and the green, leafy substance she saw, was one that a reasonable person could draw from the circumstances. Her testimony regarding the identification of the marihuana was admissible as a lay opinion under Rule 701.

*Id.* at 538.[9]

We agree with the rationale of *Santana* and *Osbourn* that an expert is not required to identify the odor of marijuana. No specialized knowledge or experience is required in order to be familiar with the smell of marijuana. A witness need only to have encountered the smoking of marijuana in daily life to be able to recognize the odor. The testimony of such witness thus would be "rationally based on the perception of the witness." *Ragland*, 385 Md. at 717, 870

---

9.  The principle enunciated in *Osbourn* is consistent with prior decisions of the Texas Court of Criminal Appeals. *See, e.g., Chaires v. State*, 480 S.W.2d 196, 198 (Tex.Crim.App.1972) (holding that the police had probable cause to seize luggage and arrest its owners when an airline employee reported an odor of marijuana emanating from the luggage and the police confirmed the odor upon arrival); *Hattersley v. State*, 487 S.W.2d 354, 355–56 (Tex.Crim.App.1972) (holding that the police had probable cause to search the's suitcase after airline employees recognized marijuana in the suit case based on sight and "the odor ... from previous occasions when they discovered similar substances which narcotics officers later identified as marihuana[,]" and the police confirmed the airline employees' conclusions); *Chess v. State*, 172 Tex. Crim. 412, 414, 357 S.W.2d 386, 387–88 (1962) (holding that the of two officers that they recognized an odor of marijuana, based on their experience as police officers, coming from the defendant's car was properly admissible as lay opinion testimony).

A.2d 609. Accordingly, we hold that the testimony of a police officer, who is capable of identifying marijuana by smell through past experience, that he or she smelled the odor of marijuana, is lay opinion testimony within the meaning of Maryland Rule 5–701.

In the instant case, Officer Tawes testified that he had been exposed previously to the smell of marijuana in his training and experience. Therefore, there was a sufficient foundation for Officer Tawes to testify regarding the odor of marijuana that he smelled upon approaching the car in which appellant was a passenger. Just as the officers in *Santana* and *Osbourn*, Officer Tawes's testimony was based on *his perception* of an odor of marijuana at the scene of the stop. Therefore, Officer Tawes's testimony was lay opinion testimony under Maryland Rule 5–701 and properly admitted as such at the adjudicatory delinquency hearing.

Finally, the State notes that appellant, "[i]nstead of arguing that a lay could not testify that he or she smelled, [ ] appears to argue that, because the officer's perception was affected by prior work experience, *Ragland* would only permit him to testify as an expert." In other words, Officer's police academy training and continuing education, as well as experience in the field, automatically precluded him from offering lay opinion testimony as to the smell of marijuana.

In determining whether an opinion offered by a witness is lay opinion or expert testimony, it is not the status of the witness that is determinative. Rather, it is the nature of the testimony. The appellant in *Osbourn* made the same argument as appellant in the case *sub judice,* and the Court of Criminal Appeals of Texas aptly responded:

There are certain fields where a witness may qualify as an expert based upon experience and training, however, use of the terms "training" and "experience" do not automatically make someone an expert. All opinions are formed by evaluating facts based on life experiences including education, background, training, occupation, etc. While [the police officer] may have had the potential to be qualified as

an expert because she possessed knowledge, skill, experience and education, she was not testifying as an expert when she identified the marihuana. Rather, she was testifying based on her firsthand sensory experiences. [The police officer] herself smelled the odor that she perceived to be burnt marihuana. The fact that she had smelled marihuana before in *the course of her employment as a police officer does not necessarily make her an expert. And, again, even if she was an expert, that would not preclude her from offering a lay opinion about something she personally perceived.*

*Osbourn,* 92 S.W.3d at 538–39 (emphasis added). Moreover, in the commentary regarding the 2000 amendment to Federal Rule 701, it states: "The amendment does not distinguish between expert and lay witnesses, but rather between expert and lay testimony."

We conclude that the fact that Officer Tawes based his opinion regarding the odor of marijuana on his prior training and experience as a police officer does not render the opinion, *ipso facto,* an expert opinion. His opinion was based on his personal perception of the odor that he smelled upon approaching the car in which appellant was a passenger. This Court has stated that "[t]he rule of admissibility of lay opinion testimony is no different when . . . the lay opinion is offered by a police officer." *Warren v.State,* 164 Md.App. 153, 168, 882 A.2d 934 (2005).

Accordingly, we find no error in the circuit court's admission of the testimony of Officer Tawes as lay opinion testimony.

**JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY SITTING AS A JUVENILE COURT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**